Filed 12/28/18 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KENNEDY DONOHUE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>AMN SERVICES, LLC,<br><br>    Defendant and Respondent. | D071865<br><br><br>(Super. Ct. No. 37-2014-00012605-CU-OE-CTL)<br><br>ORDER MODIFYING OPINION<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on November 21, 2018 be modified as follows:

1.    On page 31, line 4 of footnote 27, "1:24 p.m." is changed to "1:34 p.m.".

There is no change in the judgment.

HALLER, Acting P. J.

Copies to:  All parties

Filed 11/21/18; Certified for Publication on 12/10/18 (unmodified version)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KENNEDY DONOHUE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>AMN SERVICES, LLC,<br><br>    Defendant and Respondent. | D071865<br><br><br>(Super. Ct. No. 37-2014-00012605-CU-OE-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Joel M. Pressman, Judge.  Affirmed.

Sullivan Law Group, William B. Sullivan, Eric K. Yaeckel and Clint S. Engleson for Plaintiff and Appellant.

DLA Piper, Mary Dollarhide and Betsey Boutelle for Defendant and Respondent.

In this wage and hour class and representative action, the trial court granted a motion for summary judgment brought by defendant AMN Services, LLC (AMN), and denied motions for summary adjudication of one cause of action and one affirmative defense brought by plaintiff Kennedy Donohue, individually and on behalf of five certified plaintiff classes she represents (together Plaintiffs).  In her appeal from the

judgment, Donohue challenges the grant of AMN's motion for summary judgment and the denial of her motion for summary adjudication of one of the causes of action. On appeal, Donohue also challenges what she characterizes as the trial court's "fail[ure] to hear a proper motion for reconsideration" of the summary judgment and summary adjudication rulings.

As we explain, we lack jurisdiction to review the postjudgment order that resulted in the court's decision not to hear Donohue's motion for reconsideration, and in our de novo review of the summary judgment and summary adjudication rulings, we conclude that Donohue did not meet her burden of establishing reversible error. Accordingly, we affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

" 'Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion.' " (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 716-717.) We consider all the evidence in the moving and opposing papers, liberally construing and reasonably deducing inferences from Donohue's evidence, resolving any doubts in the evidence in Donohue's favor. (*Id.* at p. 717; Code Civ. Proc., § 437c, subd. (c).) For the most part, the relevant facts are not in dispute.

A.    *The Parties*

AMN, a healthcare services and staffing company, recruits nurses for temporary contract assignments. AMN employed Donohue as a nurse recruiter in its San Diego

office between September 2012 and February 2014.  Donohue earned a base hourly rate plus commissions, bonuses, and other forms of nondiscretionary performance-based pay.

B.  *AMN's Timekeeping System & Policies*

During the time AMN employed Donohue, AMN used a computer-based timekeeping system known as "Team Time" for all nonexempt employees, which included nurse recruiters.  Recruiters like Donohue used Team Time at their desktop computers by clicking on an icon to open the program each day, after which they usually made four entries:  Recruiters would "punch in" for the day, "punch out" when they took a meal break, punch back in when they returned from their meal break, and punch out at the end of the day.

Team Time rounded recruiters' punch times—both punch in and punch out—to the nearest 10-minute increment.[1]  To establish the proper hourly compensation, AMN would convert each 10-minute increment to a decimal (to the nearest hundredth of a minute),[2] total the number of hours (to the nearest hundredth of a minute), and multiply the total hours by the recruiter's hourly rate.

If a recruiter believed that a recorded punch time was inaccurate—e.g., the recruiter may have worked while not clocked in or forgotten to punch in or out—AMN's

---

[1]  For example, all punch times between 7:55 a.m. and 8:04 a.m. would record as 8:00 a.m., and all punch times between 8:05 a.m. and 8:14 a.m. would record as 8:10 a.m.

[2]  For example, 20 minutes would be $.33\overline{3}$ hours, which would convert to .33 hours; and 40 minutes would be $.66\overline{6}$ hours, which would convert to .67 hours.  At times, we refer to this format as "decimal hours."

written policy allowed the recruiter to contact his or her manager, who would then notify the recruiter that his or her computer timecard had been unlocked and opened for correction by the recruiter.

Recruiters did not have predetermined times during which they were required to take meal or rest breaks, but AMN had a written policy by which recruiters were: "provided meal breaks and authorized and permitted rest breaks in accordance with California law;"[3] "expected to take meal breaks as provided and rest breaks as authorized and permitted and in accordance with this policy"; and "required to accurately record their meal breaks on their time cards and to report to the Company if they are not provided with a meal break or authorized and permitted a rest break or do not otherwise take a meal break." More specifically, this written policy provided: "[Recruiters] who work more than five hours per day are provided an uninterrupted 30 minute meal period no later than the end of the [recruiter]'s fifth hour of work. If a [recruiter] works more

---

[3] "An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . ." (Lab. Code, § 512, subd. (a).) (Further undesignated statutory references are to the Labor Code.)

In general, California employers are required to provide rest periods of a specified minimum duration—e.g., 10 minutes of paid rest for every four hours worked; and for shifts of less than four hours, a 10-minute rest period after three and a half hours. (Cal. Code Regs., tit. 8, §§ 11010-11150, subd. (12)(A) & § 11160, subd. (11)(A).) (Further undesignated regulation references (tit. 8) are to the California Code of Regulations.)

"An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation . . . ." (§ 226.7, subd. (b).)

4

than five but no more than six (6) hours in a workday, the meal period may be waived by mutual consent of the Company and [the recruiter]."

Whenever there was noncompliance with the meal period requirements—e.g., if the recruiter did not punch out to take a meal period before the end of the fifth hour of work, or if the meal period was less than 30 minutes—AMN had a policy in place to ensure what it considered an appropriate remedy. During the first few weeks of Donohue's employment in September 2012, for any noncompliant meal period, Team Time assumed a Labor Code violation, and the recruiter automatically received the full statutory meal period penalty payment.[4] At all relevant times after mid-September 2012, if a recruiter's meal period was missed, shortened, or delayed, Team Time automatically provided a drop-down menu that required the recruiter's response. If the recruiter indicated that he or she chose not to take a timely 30-minute meal period, then AMN did not pay a meal period penalty; however, if the recruiter indicated that he or she was not provided the opportunity to take a timely 30-minute meal period, then AMN paid the recruiter the full statutory meal period penalty.[5] We note that *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004 (*Brinker*) became final in May 2012 and that AMN changed its policy to provide the drop-down menu in September 2012. We infer that AMN effected the change in an effort to comply with the holding in *Brinker*, where

---

[4]     During Donohue's first two weeks of employment by AMN, her time entries triggered one such meal period violation, and AMN paid Donohue the appropriate penalty.

[5]     After mid-September 2012, once Team Time required the recruiter to complete the drop-down menu for any noncompliant meal period, on 31 occasions, Donohue selected the option stating that she had been provided the opportunity, but chose not, to take a nonworking 30-minute meal period before the end of the fifth hour of work. Donohue never selected the option stating that AMN did not provide a compliant meal period.

the Supreme Court concluded that, although "an employer's obligation is to relieve its employee of all duty" during a meal period, "the employer need not ensure that no work is done"; rather, "the employee [is] thereafter at liberty to use the meal period for whatever purpose he or she desires." (*Id.* at p. 1017.)

AMN's written policy directed recruiters to "accurately record their meal breaks every day" as follows: "[Recruiters] should 'clock out' on their timesheet at the start of their meal period and 'clock in' when they return to work. Meal breaks are unpaid. [Recruiters] who are not provided a meal period as defined above will receive payment for hours worked and an additional hour's pay. [Recruiters] who waive a meal period as permitted by this policy, or who otherwise do not take a meal period which was provided as defined above, are paid for hours worked. [Recruiters] who do not take a full and timely meal period for any reason must report this on their time sheets and must also report if they were provided or not provided, as defined in this policy, with the meal period. [Recruiters] who report that they were provided a timely and full meal break but did not take it, took a shorter break or a later break are representing that he/she did so voluntarily."

In addition to hourly compensation, AMN also paid nurse recruiters like Donohue "different types of non-discretionary commissions, performance bonuses, and other incentive pay."[6] These bonuses, which may be earned monthly or quarterly, are often

---

[6] The details of these incentives are contained in formal publications from AMN, copies of which were included as exhibits in support of AMN's summary judgment motion.

due and calculable only after the pay period during which the work was performed; and in the event additional overtime must be paid on such amounts, it is calculated by a complex formula. These bonus-related overtime adjustments—*which are not tied to the recruiter's hourly wage* but rather are "the mathematical equivalent of calculating the bonus into the [recruiter's] regular rate of pay"—are denoted as "Flsa Ot" on the recruiter's wage statement.[7]

C.    *The Litigation*

Donohue filed the underlying wage and hour action in April 2014. The operative second amended complaint (complaint), filed on behalf of Donohue individually and a class of similarly situated AMN employees and former employees, contains allegations in support of the following seven causes of action: (1) failure to provide meal and rest periods in violation of sections 226.7 and 1197.1; (2) failure to pay overtime and minimum wage in violation of sections 510 and 1197.1; (3) improper wage statements in violation of section 226; (4) unreimbursed business expenses in violation of section 2802; (5) waiting time penalties in violation of sections 201-203; (6) unfair business practices in violation of Business and Professions Code section 17200; and (7) civil penalties authorized by the Labor Code Private Attorneys General Act of 2004 (PAGA), section 2698 et seq.

In October 2015, the trial court certified five classes of nonexempt AMN employees with the title of "Recruiter": (1) the overtime class; (2) the meal period class;

_____

[7]    At times, AMN refers to the bonus-related retroactive overtime adjustment as a "true-up."

(3) the rest period policy class; (4) the itemized wage statement class; and (5) the ex-employee class (of former AMN employees who are entitled to relief based on violations proven to the four prior classes of current AMN employees). The court denied class certification to Donohue's claims related to unreimbursed business expenses, which were based on an employee's use of a personal cell phone for AMN business.

Almost a year later, in September 2016, the parties filed cross-motions: AMN sought summary judgment, or in the alternative, summary adjudication of eight individual issues (which, if granted as to each issue, would result in summary judgment);[8] and Donohue sought summary adjudication of two issues. AMN and Donohue filed numerous pleadings in support of their respective motions; AMN and Donohue filed numerous pleadings in opposition to their adversary's motion; AMN and Donohue filed replies to their adversary's oppositions; AMN and Donohue filed objections to specified evidence submitted by their adversary; and AMN and Donohue responded to the evidentiary objections of their adversary. Following oral argument, the court took the matter under submission, ultimately granting AMN's motion for summary judgment and denying Donohue's motion for summary adjudication. More specifically, the court sustained certain evidentiary objections, overruled other evidentiary objections, granted summary adjudication of all eight issues in AMN's motion—thereby resulting in

---

[8]     In an amended notice and motion filed a month later, AMN sought essentially the same relief, relying exclusively on the supporting documentation filed in support of the September 2016 motion.

the grant of summary judgment—and denied summary adjudication of the two issues raised in Donohue's motion.

In December 2016, Donohue filed a motion for reconsideration of the order granting AMN's motion for summary judgment and denying Donohue's motion for summary adjudication.

Two days later, on December 14, 2016, the trial court filed its judgment in favor of AMN and against Donohue, based on the grant of AMN's motion for summary judgment and the denial of Donohue's motion for summary adjudication.

In January 2017, Donohue filed an ex parte application for an order striking the filing of the judgment (so that the court could hear her pending motion for reconsideration of the order granting AMN's motion for summary judgment and denying Donohue's motion for summary adjudication) and allowing her to file a supplemental brief in support of her motion for reconsideration. The court denied the application and "vacated" Donohue's pending motion for reconsideration.

Donohue timely appealed from the judgment in February 2017.

9

## II. STANDARDS OF APPELLATE REVIEW

Because the trial court's judgment is presumed correct, Donohue (as the appellant) has the burden of establishing reversible error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*); *Demara v. The Raymond Corp.* (2017) 13 Cal.App.5th 545, 552 (*Demara*) [appeal from defense summary judgment].)

A.     *Summary Proceedings Under Code of Civil Procedure Section 437c.*

In both summary judgment and summary adjudication proceedings, with exceptions inapplicable here, the pleadings—i.e., the complaint and the answer—determine the scope of the relevant issues. (*Port Medical Wellness, Inc. v. Connecticut General Life Ins. Co.* (2018) 24 Cal.App.5th 153, 169.)

A defendant's motion for summary judgment asks the court to determine, as a matter of law, that the entire action has no merit. (Code Civ. Proc., § 437c, subd. (a).) A cause of action "has no merit" if one or more of the elements of the cause of action cannot be established or an affirmative defense to the cause of action can be established. (Code Civ. Proc., § 437c, subd. (o).) As applicable here, a defendant's motion for summary adjudication may ask the court to determine, as a matter of law, that one or more causes of action or one or more claims for damages have no merit. (Code Civ. Proc., § 437c, subd. (f)(1).)

A plaintiff's motion for summary judgment asks the court to determine, as a matter of law, that the defendant has no defense to the action. (Code Civ. Proc., § 437c, subd. (a).) A successful motion for summary judgment terminates the action without a trial. (*Ibid.*) As applicable here, a plaintiff's motion for summary adjudication asks the

court to determine, as a matter of law, that there are no affirmative defenses to one or more causes of action or to one or more claims for damages. (Code Civ. Proc., § 437c, subd. (f)(1).)

To be successful, a summary adjudication motion must completely dispose of the entire cause of action, defense, damages claim, or duty to which the motion is directed. (Code Civ. Proc., § 437c, subd. (f)(1).) A successful motion for summary adjudication eliminates the need to prove or disprove a particular claim, leaving the remainder of the case to go to trial—after which one judgment is entered covering the issues decided in the motion and the trial. (Code Civ. Proc., § 437c, subds. (k), (n).) A summary adjudication motion "proceed[s] in all procedural respects as a motion for summary judgment." (Code Civ. Proc., § 437c, subd. (f)(2).)

We review de novo the trial court's order granting or denying summary judgment or summary adjudication. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*) [summary judgment]; *Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 273 [summary adjudication].) As a practical matter, " ' "we assume the role of a trial court and apply the same rules and standards" ' " which govern the trial court's determination of the motion in the first instance. (*Demara, supra*, 13 Cal.App.5th at p. 552.)

B.      *Standards Applicable to the Grant of AMN's Motion for Summary Judgment*

A moving defendant has the ultimate burden of *persuasion* that one or more elements of the cause of action at issue "cannot be established" or that "there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at pp. 849, 850, 853-854.) In attempting to achieve this goal, the

11

defendant has the initial burden of *production* to make a prima facie showing of the nonexistence of any triable issue of material fact.  (*Aguilar*, at pp. 850-851.)  If the defendant meets this burden, then the burden of *production* shifts to the plaintiff to establish the existence of a triable issue of material fact.  (*Ibid.*)

Applying these concepts in our de novo review of the grant of summary judgment here, therefore, we first must determine whether AMN's initial showing establishes an entitlement to judgment in AMN's favor.  (*Aguilar*, *supra*, 25 Cal.4th at pp. 850-851; *Demara, supra*, 13 Cal.App.5th at p. 552.)  If so, we then determine whether Donohue's responsive showing establishes a triable issue of material fact.  (*Aguilar*, at pp. 850-851; *Demara*, at p. 552.)

C.      *Standards Applicable to the Denial of Donohue's Motion for Summary Adjudication*

A moving plaintiff has the ultimate burden of *persuasion* that "there is no defense to a cause of action," but only after that plaintiff first "has proved each element of the cause of action entitling the party to judgment."  (Code Civ. Proc., § 437c, subd. (p)(1); *Aguilar, supra*, 25 Cal.4th at pp. 849, 850.)  In attempting to achieve this goal, the plaintiff has the initial burden of *production* to make a prima facie showing of the nonexistence of any triable issue of material fact.  (*Aguilar*, at pp. 850-851.)  If the plaintiff meets this burden, then the burden of *production* shifts to the defendant to establish the existence of a triable issue of material fact.  (*Ibid.*)

Applying these concepts in our de novo review of the denial of summary adjudication here, therefore, we first must determine whether Donohue's initial showing

12

establishes an entitlement to judgment in her favor on the particular cause of action or defense.  (*Aguilar*, *supra*, 25 Cal.4th at pp. 850-851.)  If so, we then determine whether AMN's responsive showing establishes a triable issue of material fact either as to an element of Donohue's cause of action or as to an applicable affirmative defense of AMN.  (*Aguilar*, at pp. 850-851.)

## III.  DISCUSSION

We begin with the recognition, understanding, and appreciation that the purpose of the California statutes governing the employment relationship is "the protection of employees"; and, for that reason, we " 'liberally construe the Labor Code and wage orders[9] to favor the protection of the employees.' "  (*Troester, supra*, 5 Cal.5th at p. 839; accord, *Prachasaisoradej v. Ralphs Grocery Co., Inc.* (2007) 42 Cal.4th 217, 227 [because statutes governing the employer/employee relationship are "remedial in nature," they must be liberally construed "with an eye to promoting the worker protections they were intended to provide"].)

AMN's motion for summary judgment, or in the alternative, summary adjudication, is comprised of motions for summary adjudication of the following eight issues:

---

9    The Industrial Welfare Commission is the state agency "empowered to promulgate wage orders, which are legislative regulations specifying minimum requirements with respect to wages, hours, and working conditions."  (*Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 281, fn. 5.)  The wage orders that the commission adopts " 'are to be accorded the same dignity as statutes' . . . [and] take precedence over the common law to the extent they conflict."  (*Troester v. Starbucks Corp.* (2018) 5 Cal.5th 829, 839 (*Troester*).)

- AMN Issue No. 1—"AMN is entitled to summary adjudication on Plaintiffs' certified overtime claim because AMN's methods of calculating and paying overtime compensation are lawful."

- AMN Issue No. 2—"AMN is entitled to summary adjudication on Plaintiffs' certified meal period claim because there is no evidence of a uniform policy or practice to deny meal periods, and because Plaintiffs' theory that the rounding practice resulted in meal period violations is not pled in the operative Complaint."

- AMN Issue No. 3—"AMN is entitled to summary adjudication on Plaintiffs' certified rest period claim because there is no evidence of a uniform policy or practice to deny rest periods."

- AMN Issue No. 4—"AMN is entitled to summary adjudication on Plaintiffs' certified claims for wage statement violations because the format of AMN's wage statements is lawful, and because Plaintiffs' wage-statement claims are otherwise derivative of their other claims under the California Labor Code, which also fail."

- AMN Issue No. 5—"AMN is entitled to summary adjudication on Plaintiffs' certified claim for waiting time penalties because it is derivative of Plaintiffs' other claims under the California Labor Code, which also fail."[10]

- AMN Issue No. 6—"AMN is entitled to summary adjudication of Plaintiffs' claim for violations of Business and Professions Code section 17200 because Plaintiffs have identified no 'unlawful, unfair, or fraudulent' conduct that could support this claim as a matter of law."[11]

- AMN Issue No. 7—"AMN is entitled to summary adjudication on Plaintiff Donohue's claim for penalties under [PAGA, section ]2698 *et seq.*, because this

---

[10] Donohue does not mention this issue in her appellate briefs. Thus, she has forfeited appellate review of the ruling granting the motion. (*Atempa v. Pedrazzani* (2018) 27 Cal.App.5th 809, 830 (*Atempa*) [citing Cal. Rules of Court, rule 8.204(a)(1)(B)]; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*) [when appellant fails to provide " ' "reasoned argument and citations to authority, we treat the point as waived" ' "].) Accordingly, we affirm the trial court's ruling as to AMN Issue No. 5.

[11] Donohue does not mention this issue in her appellate briefs. Thus, she has forfeited appellate review of the ruling granting the motion. (*Atempa, supra*, 27 Cal.App.5th at p. 830; *Cahill, supra*, 194 Cal.App.4th at p. 956.) Accordingly, we affirm the trial court's ruling as to AMN Issue No. 6.

14

claim is derivative of Plaintiffs' other claims under the California Labor Code, which also fail, and because Donohue has failed to exhaust her administrative remedies."

- AMN Issue No. 8—"AMN is entitled to summary adjudication on Plaintiff Donohue's individual claim for unreimbursed business expenses because she cannot meet her burden to show that she actually incurred such expenses."[12]

In support of its alternative motion, AMN argued that, if each of the eight issues is summarily adjudicated in its favor, then there is no triable issue of material fact in the complaint, and AMN is entitled to summary judgment as a matter of law.

In her motion, Donohue sought summary adjudication of the following two issues:

- Donohue Issue No. 1—"[AMN] possessed a standard time system in place for all members of the certified class which improperly alters the recorded meal periods. This policy violates California law in multiple ways. . . ."

- Donohue Issue No. 2—"[AMN's] 40th Affirmative Defense regarding 'Make Up Time,' pursuant to [section ]513, cannot be established as a matter of law . . . ."[13]

On appeal, Donohue contends that, if the trial court had not erroneously denied summary adjudication of Donohue Issue No. 1, she and the meal period class would be entitled to $802,077.07 in meal period penalties—presumably based on the first cause of action for failure to provide meal and rest periods.

---

[12]    On appeal, Donohue affirmatively states that she is not challenging the court's ruling granting AMN's motion as to this issue (unreimbursed business expenses). Accordingly, we affirm the trial court's ruling as to AMN Issue No. 8.

[13]    On appeal, Donohue raises no argument as to the denial of the motion as to Donohue Issue No. 2.  Thus, she has forfeited appellate review of this ruling.  (*Atempa, supra*, 27 Cal.App.5th at p. 830); *Cahill, supra*, 194 Cal.App.4th at p. 956.)  Accordingly, we affirm the trial court's ruling as to Donohue Issue No. 2, although we do mention it further at part III.E., *post*.

Donohue does not present her arguments on appeal in a format by which we might review each motion for summary adjudication or each cause of action in the complaint. As a result, we are required to discuss each of Donohue's issues as Donohue presents them in her opening brief in the context of the parties' motions in the trial court and the trial court's rulings. As we explain, because Donohue did not meet her burden of establishing reversible error on appeal, we affirm the judgment.

First, however, we explain why this court lacks jurisdiction to consider the trial court's January 2017 postjudgment order denying Donohue's ex parte application.

A.    *The Court Lacks Jurisdiction to Consider the January 2017 Postjudgment Order*

In this appeal, the parties briefed issues related to the postjudgment minute order denying Donohue's ex parte application to strike entry of the judgment (to allow the court to hear Donohue's motion for reconsideration) and to allow Donohue to file a supplemental brief in support of her motion for reconsideration. The briefing did not include a mention of jurisdiction to review this order, and we requested and received supplement briefing.

As a postjudgment order that denies a motion to "strike" the entry of a document or to file a supplemental brief, the January 2017 minute order was final and appealable. (Code Civ. Proc., § 904.1, subd. (a)(2).) However, in her written notice, Donohue appealed *only* from the "judgment . . . entered on December 14, 2016." She did not appeal from the postjudgment order, and "if an order is appealable, [an] appeal must be taken or the right to appellate review is forfeited." (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 761, fn. 8; accord *Pfeifer v. John Crane, Inc.* (2013) 220 Cal.App.4th 1270,

16

1315-1316 [" ' "[i]f a judgment or order is appealable, an aggrieved party must file a timely appeal or forever lose the opportunity to obtain appellate review" ' "].)  This is a jurisdictional principle; an appellate court lacks the power to review an appealable order if a timely appeal is not taken.[14]  (*Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc*. (1997) 15 Cal.4th 51, 56; see Code Civ. Proc., § 906.)

Alternatively, to the extent the January 2017 postjudgment order can be considered a denial of a nonstatutory motion to vacate (as oppose to strike) the judgment, such an order is not appealable.  (*Scognamillo v. Herrick* (2003) 106 Cal.App.4th 1139, 1146 [to hold otherwise would authorize two appeals from the same decision; any assertions of error in the judgment can be reviewed on appeal from the judgment itself[15]]; *Forman v. Knapp Press* (1985) 173 Cal.App.3d 200, 203 [nonstatutory motion to vacate a summary judgment is "akin to a motion for new trial," the denial of which is not appealable].)

Donohue argues that she was not required to separately appeal from the postjudgment order.  Despite the express language of the written order (denying the application to strike entry of the judgment and to allow supplemental briefing on her

---

14     At the outside, the time to appeal from the January 2017 postjudgment order was 180 days after entry of the order (Cal. Rules of Court, rule 8.104(a)(1)(C))—which, in this case expired in July 2017.

15     Indeed, at part III.G., *post*, based on Donohue's argument in support of her appeal *from the judgment*, we will consider the principal argument Donohue presented in her motion for reconsideration.

then-pending motion for reconsideration of the order granting summary judgment), Donohue tells us that the order "actually **denied** the pending motion for reconsideration without a hearing." (Original italics and bolding.) She then suggests that, even though she did not appeal from the postjudgment order, Code of Civil Procedure section 1008 allows for appellate review, because, under subdivision (g), although an order denying a motion for reconsideration is generally not appealable, "if the order that was the subject of a motion for reconsideration is appealable, the denial of the motion for reconsideration is reviewable as part of an appeal from that order." There are at least two independent problems with Donohue's position.

First, the present appeal is from the judgment, not from the order granting AMN's motion for summary judgment; nor could it be, since an order granting summary judgment is not appealable (*Dang v. Maruichi American Corp.* (2016) 3 Cal.App.5th 604, 608, fn. 1). Thus, subdivision (g) of Code of Civil Procedure section 1008 is inapplicable.

Moreover, contrary to Donohue's presentation in her supplement brief, the order denying Donohue's ex parte application did not *deny* her then-pending motion for reconsideration; the order denied Donohue's request to file an additional brief in support of the then-pending motion for reconsideration and then "vacate[d]" the motion and the hearing on the motion. The record is consistent: (1) In her application, Donohue requested an order "Striking the Court's entry of judgment as premature" and "Allowing [Donohue] to file a brief supplement to her [pending] Motion for Reconsideration"; (2) in support of the application, Donohue's attorney testified that the relief being sought in the

18

application was "an order striking the entry of judgment as premature and seeking permission to file a supplement to the motion for reconsideration"; and, (3) in its written order denying Donohue's request, the court described the proceeding as Donohue's "application for an order striking judgment and allow[ing Donohue] to supplement [her] motion for reconsideration."

For the foregoing reasons, we lack jurisdiction to consider the January 2017 postjudgment order and express no opinion on the merits of the ruling(s) in the order.

B.      *The Trial Court Did Not Err in Ruling That, for Purposes of the Cross-Motions, AMN's Rounding Policy Complies with California Law*

At least three of the parties' motions for summary adjudication required the trial court to determine whether AMN's timekeeping system for recruiter employees—in particular, AMN's rounding policy—complied with California law.[16] Thus, we analyze this issue first and, as we explain, conclude that, based on the record in this appeal, the rounding policy is compliant.

In California, the rule is that an employer is entitled to use a rounding policy "if the rounding policy is fair and neutral on its face and 'it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.' " (*See's Candy Shops, Inc. v. Superior Court* (2012) 210 Cal.App.4th 889, 907 (*See's Candy I*), quoting 29 C.F.R. § 785.48(b)

---

[16]      These motions include:  AMN Issue No. 1; AMN Issue No. 2; and Donohue Issue No. 1.  (See pts. III.D., III.B.1. & III.B.2., respectively, *post*.)

(2012)[17] and citing Division of Labor Standards Enforcement (DLSE) Enforcement

Policies and Interpretations Manual (2002 rev.) §§ 47.1, 47.2 (DLSE Manual)[18].)

Under this standard, an employer's rounding policy is "fair and neutral" if " 'on

average, [it] favors neither overpayment nor underpayment' "; but such a policy is

unacceptable if it " 'systematically undercompensate[s] employees' " because it

---

[17]  The United States Department of Labor adopted a regulation (29 C.F.R. § 785.48) under the federal Fair Labor Standards Act (FLSA; 29 U.S.C. § 201 et seq.) which permits employers to use time-rounding policies in certain circumstances. (*See's Candy I*, *supra*, 210 Cal.App.4th at p. 901.)  In full, 29 Code of Federal Regulations section 785.48(b) is entitled " 'Rounding' practices" and provides:  "It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work.  For enforcement purposes this practice of computing working time will be accepted, provided that *it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked*."  (Italics added.)

[18]  The DLSE is the California state agency charged with enforcing wage and hour laws.  (*See's Candy I*, *supra*, 210 Cal.App.4th at p. 902.)  Statements in the DLSE Manual are not binding on the courts, but merely persuasive.  (*Id.* at pp. 902-903.)  The DLSE has adopted the federal standard set forth at 29 C.F.R. section 785.48(b), quoted at footnote 17, *ante*:  "The [DLSE] utilizes the practice of the U.S. Department of Labor of 'rounding' employee's hours to the nearest five minutes, one-tenth or quarter hour for purposes of calculating the number of hours worked pursuant to certain restrictions." (DLSE Manual, *supra*, § 47.1, quoted in *See's Candy I*, *supra*, 210 Cal.App.4th at p. 902.)  Further relying on this federal standard, *See's Candy I* also quoted as follows from section 47.2 of the DLSE Manual:  " 'There has been [a] practice in industry for many years to follow this practice, recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work.  For enforcement purposes this practice of computing working time will be accepted by DLSE, *provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked*.' "  (*See's Candy I*, at p. 902, italics added.)

20

" 'encompasses only rounding down.' " (*See's Candy I, supra*, 140 Cal.App.4th at pp. 901-902, 907.) In *See's Candy I*, we reasoned that if an employer's rounding policy "is neutral, both facially and as applied, the practice is proper under California law because its net effect is to permit employers to efficiently calculate hours worked without imposing any burden on employees." (*Id.* at p. 903.) Federal and state appellate courts have applied this standard to California employers consistently since *See's Candy I*, *supra*, 210 Cal.App.4th 889, in 2012. (E.g., *AHMC Healthcare, Inc. v. Superior Court* (2018) 24 Cal.App.5th 1014, 1023-1024 (*AHMC Healthcare*) [rounding to nearest quarter hour]; *Silva v. See's Candy Shops, Inc.* (2016) 7 Cal.App.5th 235, 249 (*See's Candy II*) [rounding to nearest 10th of an hour]; *Corbin v. Time Warner Entertainment–Advance/Newhouse Partnership* (9th Cir. 2016) 821 F.3d 1069, 1076 (*Corbin*) [rounding to nearest quarter hour].) Indeed, earlier this year, in *Troester, supra*, 5 Cal.5th 829, our Supreme Court approvingly cited the *See's Candy I* rule and analysis set forth above (*Troester,* at pp. 846-847)—although the court did not apply *See's Candy I*, because the issue in *Troester* was whether "the de minimis doctrine found in the FLSA," not the *See's Candy I* rounding standard, applied to the facts in that case (*Troester,* at p. 848).

In the present case, in support of its motion and in opposition to Donohue's motion, AMN submitted evidence in the form of expert testimony from a labor economist who analyzed AMN's recruiter employees' time records from April 23, 2010, through April 26, 2015 (rounding period). He explained that, under AMN's time entry system, the records contain two entries for each employee "punch"—(1) the actual time that the

21

employee clocked in or out, and (2) the nearest 10-minute increment *up or down*.  (See fn. 1, *ante*.)  AMN paid its employees on the basis of the rounded, not actual, times clocking in and out.

With regard to Donohue and the nurse recruiters, AMN's expert analyzed the time records during the rounding period logged by 311 recruiters—time records that reflected more than 500,000 work-hours.  Based on his detailed analysis, the expert testified that AMN's practice of rounding punch times to the nearest 10-minute increment resulted overall in "a *net surplus* of 1,929 work hours in paid time for the Nurse Recruiter class as a whole."[19]  (Italics added.)

As to the ultimate issues, the expert opined:  "The ten-minute rounding rule is thus *neutral*; in the long run, neither the employer nor the employee benefits from this policy. [¶] . . . [¶]  . . . AMN's practice of rounding employee punch times to the nearest ten-minute increment did not result in any failure, over time, to properly compensate the Nurse Recruiters as a class for all time they actually worked."  (Italics added.)  By this evidence and the related evidence and argument that it paid all wages due based on its calculation of the hours its recruiters worked, on this record AMN met its initial burden of establishing that AMN's rounding policy is lawful.

---

19    With regard to Donohue personally, during the rounding period, AMN's practice of rounding punch times to the nearest 10-minute increment resulted in a *net surplus* of 9.82 hours—which is an *overpayment* of approximately $151.03 based on Donohue's hourly wage.

In an effort to meet her responsive burden, Donohue relied on the expert testimony of a statistics professor.[20]  In her response to AMN's separate statement, Donohue disputed AMN's evidence set forth above as follows:  "[Donohue's] expert . . . found that the Team Time system resulted in AMN failing to pay its employees for 2,631.583 hours of actual time worked.  This amounted to $47,959.30 in unpaid compensation owed to the class."  However, as the trial court correctly ruled, this evidence from Donohue did not establish the existence of a triable issue of fact as to whether AMN's rounding policy was lawful, because Donohue's expert only considered the recruiters' uncompensated time as a result of " 'Short Lunches' " and " 'Delayed Lunches.' "[21]  Because he did not consider evidence that Plaintiffs may have *gained* (and, in fact, did gain) compensable work time by the rounding policy, he necessarily did not offset the amounts of uncompensated time

---

[20]    Actually, Donohue submitted the expert's declaration in support of *her motion for summary adjudication* with no mention of the declaration in her brief in *her opposition to AMN's motion*.  Donohue did cite to the declaration in her *response to AMN's separate statement*, which the trial court considered in ruling on AMN's motion; and AMN responded to this evidence in its appellate brief on this issue.  Therefore, we consider this evidence on appeal as well.  We begin by noting that, in her opening brief on appeal, Donohue does not once mention AMN's expert—or even the fact that AMN presented expert testimony—let alone discuss the expert evidence or attempt to apply it to the procedural (summary judgment law) or substantive (wage and hour law) issues in the appeal.

[21]    At oral argument, counsel for Donohue stated more than once that the trial court erred by not considering Donohue's expert's testimony.  The record does not support counsel's statement.  The court considered and rejected the expert's opinions as to the neutrality of AMN's rounding policy, expressly explaining its reasoning in its order granting AMN's motion.

by amounts of time for which Plaintiffs were compensated but not working.[22]

Accordingly, Donohue did not meet her responsive burden of establishing a triable issue of material fact *under the applicable legal standard* for determining whether AMN's rounding policy complied with California law.[23]  (See *Aguilar, supra*, 25 Cal.4th at pp. 850-851.)

On this record, therefore, for purposes of AMN's motion, AMN established that AMN's rounding policy during the rounding period was—in the language of *See's Candy I*, *supra*, 210 Cal.App.4th at page 907—"fair and neutral on its face and . . . 'used in such a manner that it [did] not result, over a period of time, in failure to compensate the [recruiter] employees properly for all the time they have actually

---

[22]     For example, assume that the deadline for offering a recruiter a timely meal period is 1:00 p.m. (i.e., before the end of the fifth hour of work), but that the recruiter is not offered the meal period until 1:04 p.m.  Under AMN's rounding policy, the meal period is timely because the actual punch of 1:04 p.m. is considered 1:00 p.m.  Donohue's expert's testimony is that, in this example, AMN's rounding policy results in *at least one* violation (i.e., no meal break before the end of the fifth hour of work) and *potentially* second violation (i.e., if the recruiter punches back in at any time between 1:25 p.m. and 1:33 p.m., since such a punch is considered 1:30 p.m., yet the actual time of the meal period is less than 30 minutes).  However, in forming his opinions, Donohue's expert failed to consider the situation where 1:00 p.m. is the deadline for a timely meal period, where the recruiter takes a meal period break at 12:55 p.m. (which is considered 1:00 p.m.) or punches back in at 1:34 p.m. (which is considered 1:30 p.m.).  In both of these hypotheticals, the recruiter received credit for work and payment of wages for time during which the recruiter was on a meal period break.

[23]     To the extent Donohue attempted to prove, *as part of her motion*, that AMN's rounding policy violated California law, Donohue's showing (described in the text, *ante*) was insufficient to meet her initial burden; i.e., the burden never shifted to AMN to establish the existence of a triable issue of material fact under *Aguilar, supra*, 25 Cal.4th at pages 850-851.

24

worked.' " We apply this conclusion, as appropriate, to various arguments Donohue raises in her appeal.

C.      *The Trial Court Did Not Err in Deciding Issues Related to the Meal Period Claims*

In general, California law requires that an employee who works a shift of more than five hours at one time must be allowed "a meal period of not less than 30 minutes." (§ 512, subd. (a); tit. 8, § 11040, subd. 11(A).)  If an employer fails to provide an employee with such a meal period, then the employer must pay the employee one additional hour of pay for each workday that the meal period is not provided.  (§ 226.7, subd. (c); tit. 8, § 11040, subd. 11(B).)

        1.      *The Trial Court Did Not Err in Granting AMN's Motion for Summary Adjudication AMN Issue No. 2*

The trial court granted AMN's motion for summary adjudication of AMN Issue No. 2, which was directed to Donohue's meal period claim on two independent grounds: (1) There was no evidence of a uniform policy or practice to deny meal periods; and (2) Donohue did not plead in the complaint that the rounding practice resulted in meal period violations.

Donohue contends that "time record evidence can establish meal period violations," citing and quoting from *Safeway, Inc. v. Superior Court* (2015) 238 Cal.App.4th 1138, 1159-1160 (*Safeway*), and *Lubin v. The Wackenhut Corp.* (2016) 5 Cal.App.5th 926, 951 (*Lubin*).  Based on those authorities, Donohue then argues that, because she provided evidence of "over 45,000 shortened and delayed meal periods" directly from recruiters' time records (some capitalization and bolding omitted), the trial

25

court erred in granting AMN's motion directed to Donohue's meal period claim. More specifically, Donohue relies on the evidence from her expert who testified that, based on the *actual times* the recruiters punched out and in for their meal periods during the rounding period, there were 40,110 " 'short' meal periods" (i.e., less than 30 minutes) and 6,651 " 'delayed' meal periods" (i.e., not offered until after the end of the fifth hour). According to Donohue, *any* time records that establish a meal period violation " 'immediately' " entitle the recruiter to a premium wage penalty payment. (Bolding omitted.)

As we explained at part III.B. and footnote 22, *ante*, however, because Donohue's expert based his testimony on the *actual times* the recruiters punched out and in for their meal period, he neither considered nor accounted for an application of *AMN's rounding policy* to the *actual* meal period punches. Thus, in response to AMN's evidence that AMN's rounding policy was fair and neutral on its face and used in such a manner that, over time, recruiters were compensated properly for the time they worked, Donohue's evidence did not raise the existence of a triable issue of material fact as to the effect of the rounding policy on the recruiters' actual punches when taking and returning from meal periods.

Instead, Donohue argues that a rounding policy should *never* be applied to meal period time punches, because application of such a policy "is contrary to the plain language of the Labor Code [and a wage order.]" (Bolding and some initial capitalization omitted.) Quoting from section 512 and title 8, section 11040, subdivision 11, Donohue argues that, because the express terms of both the statute and regulation "*require* that

26

employees be provided 'with a meal period of not less than 30 minutes,' "[24] any meal period of less than 30 actual minutes is a per se violation of law. (Italics added.) As a result of each such violation in the present case, Donohue's argument continues, AMN owes each affected recruiter compensation for both the time worked during the 30-minute break period and the related penalty. We reject Donohue's suggestion that the court blindly apply section 512, subdivision (a), and title 8, section 11040, subdivision 11(A), without consideration of rounding—a wage and hour procedure that has been accepted in California since at least 2012 (*See's Candy I*, *supra*, 210 Cal.App.4th at p. 907) and cited approvingly by our Supreme Court as recently as earlier this year (*Troester, supra*, 5 Cal.5th at pp. 846-847).

Initially, Donohue's reliance on *Safeway, supra*, 238 Cal.App.4th 1138, and *Lubin, supra*, 5 Cal.App.5th 926, is misplaced. In each of those cases, the appellate court was reviewing a ruling on class certification, not on the merits of the plaintiff class's claims. (*Safeway, supra*, 238 Cal.App.4th at p. 1144; *Lubin, supra*, 5 Cal.App.5th at p. 931.) Likewise, *ABM Industries Overtime Cases* (2017) 19 Cal.App.5th 277 (*ABM*), quoted by Donohue in her reply brief, was an appeal following class certification procedures. (*Id.* at pp. 283-284.) This distinction is significant. As *Brinker* explains: " 'The certification question is "essentially a procedural one that does not ask whether an action is legally or factually meritorious." ' . . . ' "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the

---

24    Actually, Donohue cited *subdivision 10* of title 8, section 11040. We assume that she meant *subdivision 11*.

27

merits, but rather whether the requirements of [class certification] are met." ' . . . [R]esolution of disputes over the merits of a case generally must be postponed until after class certification has been decided . . . , with the court assuming for purposes of the certification motion that any claims have merit." (*Brinker, supra*, 53 Cal.4th at p. 1023, citations omitted.) During the class certification process, the court is concerned with issues of commonality and whether the class is ascertainable; and *in that context*, an employer's time records may establish a rebuttable presumption that shortened or delay meal periods reflect a section 226.7 violation. (See *Safeway,* at pp. 1159-1160; *Lubin,* at p. 951.)

The standard is different on summary judgment. We look to the evidence the employer submits in support of its initial burden; and where an employer meets this initial burden, the employer has rebutted any applicable presumption, and the burden shifts to the employee to establish a triable issue of material fact.[25] (See *See's Candy II,*

_____

[25] Donohue correctly notes that the rebuttable presumption analysis applied in *Safeway*, *Lubin*, and *ABM* was based on Justice Werdegar's concurrence in *Brinker, supra*, 53 Cal.4th at page 1053 ("If an employer's records show no meal period for a given shift over five hours, a rebuttable presumption arises that the employee was not relieved of duty and no meal period was provided."). (*Safeway, supra*, 238 Cal.App.4th at pp. 1159-1160; *Lubin, supra*, 5 Cal.App.5th at p. 951.) However, we reject Donohue's suggestion to apply this standard here. First, as we explained in the text, *ante*, presumptions in summary judgment proceedings are different than presumptions that might arise in class certification proceedings. Moreover, although Justice Liu joined Justice Werdegar's rebuttable presumption proposal, the majority of justices did not (*Brinker,* at p. 1055 [conc. opn. of Werdegar, J.]); and "concurring opinions are not binding precedent" (*In re Marriage of Dade* (1991) 230 Cal.App.3d 621, 629).

Contrary to Donohue's suggestion, we do not read *ABM* as stating that Justice Werdegar's rebuttable presumption applies to a plaintiff's substantive proof of damages. As *ABM* explained, the burden of proof shifts to the employer in the wage and hour context *only* where " 'an employer's compensation records are so incomplete or inaccurate

*supra*, 7 Cal.App.5th at p. 254; see generally *Aguilar, supra*, 25 Cal.4th at pp. 850-851.) Indeed, in the present case, when the trial court certified the plaintiff class in 2015, the court explained that it was considering merely issues, including presumptions, related to the "ascertainability and a well-defined community of interest" of the proposed class; only later, if called on to decide *the merits of the claims*, would the court consider "whether the uniform policies in place were, in fact, unlawful."

Further, Donohue's position that AMN's rounding policy may *never* be applied to meal period time punches is insupportable on the present record.

Whenever a recruiter's rounded punch times resulted in a noncompliant meal period time (i.e., either a meal period of less than 30 minutes or no opportunity for a meal period before the beginning of the sixth hour of work), a drop-down menu appeared on the recruiter's computer screen beneath the punch times for the date in question.[26] Before the recruiter could electronically submit the time, the recruiter was required to select one of the following options: (1) the recruiter was provided the opportunity to take a compliant meal period (i.e., a 30-minute break before the end of the fifth hour of work), "but chose not to"; (2) the recruiter was provided the opportunity to take a compliant meal period, "but chose to take a shorter/later break"; or (3) the recruiter was not

that an employee cannot prove his or her damages' " or " ' "the employer has failed to keep records required by statute." ' " (*ABM, supra*, 19 Cal.App.5th at p. 311.) Those facts are not present in this case.

[26] Actually, AMN's policy (of requiring the recruiter to select from a drop-down menu any time the rounded time indicated a noncompliant meal period) began a few weeks after Donohue began working at AMN.

provided an opportunity to take a compliant meal period. If a recruiter checked the third option, AMN automatically paid the recruiter the required section 226.7, subdivision (c) penalty. Based on this procedure, Donohue suggests that, because the drop-down menu only appeared *after* application of AMN's rounding policy, the policy masked or covered up meal period violations.

However, there is no basis on which to deny application of AMN's California-compliant rounding policy to a recruiter's meal period.

First, contrary to the premise to Donohue's argument—namely, that *any* noncompliant meal period entitles an employee to a penalty (and perhaps additional wages)—by providing the employee the above-described three choices in the drop-down menu, AMN's policy at issue complied with *Brinker, supra*, 53 Cal.4th at page 1017 (Although "an employer's obligation is to relieve its employee of all duty" during a meal period, "the employer need not ensure that no work is done"; rather, "the employee [is] thereafter at liberty to use the meal period for whatever purpose he or she desires.").

More to the point, in the present appeal, we are tasked with determining whether AMN's rounding policy "is neutral, both facially and as applied." (*See's Candy I, supra*, 210 Cal.App.4th at p. 903; accord, *AHMC Healthcare, supra*, 24 Cal.App.5th at pp. 1023-1024; *See's Candy II, supra*, 7 Cal.App.5th at p. 249; *Corbin, supra*, 821 F.3d at p. 1076; see also *Troester, supra*, 5 Cal.5th at pp. 846-847) This standard contains no

30

limitation to suggest it does not apply (or should not be applied) to meal periods.[27]

Neither Donohue's briefs nor our independent research has disclosed any such limitation, and the policy that we considered, applied, and resulted in our decision in *See's Candy I*, *supra*, 210 Cal.App.4th at page 903—namely, "recogni[tion] that time-rounding is a practical method for calculating worktime and can be a neutral calculation tool for providing full payment to employees"—applies to the timekeeping of meal periods as well as to timekeeping of the beginning of an employee's shift as in *See's Candy I*.

Donohue contends that a rounding policy should *never* be applied to meal periods because to do so "would quickly eviscerate employee[s'] statutory right to full 30 minute meal periods," especially in the context of rounding to the nearest quarter hour.[28] However, Donohue's hypothetical is insufficient to rebut—i.e., to raise a triable issue of fact regarding—the *evidence* AMN submitted in support of its motion. This evidence indicates that, over time, AMN did not fail to properly compensate the recruiters, as a class, for all the time they worked based on the rounding policy in effect.[29] As such,

---

[27]    Donohue argues that "rounding *always* negatively impacted employees' meal periods." We disagree. The neutrality of AMN's rounding policy is demonstrated by the following illustration: If the recruiter punched out at 12:55 p.m. and punched back in at 1:24 p.m., the recruiter would have had a *39 minute meal period*—which complies with both section 512, subdivision (a) and title 8, section 1104, subdivision 11(A)—*and also* would have been paid for nine minutes of this time, since rounding would show a punch out at 1:00 p.m. and a punch back in at 1:30 p.m.

[28]    This case does not involve rounding to the nearest quarter of an hour.

[29]    In her opening brief on appeal, Donohue relies on evidence from her expert regarding the effect of the application of AMN's rounding policy to meal periods. According to Donohue, this evidence "caused class members to not be paid for a total of

31

Donohue did not establish that Plaintiffs were entitled either to additional wages or penalties.

Donohue next complains that AMN's rounding policy is not "neutral" because the rounded time never results in the issuance of a meal period penalty when the actual time does not reflect a violation (i.e., when the recruiter receives a 30-minute meal period before the sixth hour of work). Donohue misconstrues the concept of neutrality in this context. The same argument could be made about shift hours—i.e., rounded time will never result in the issuance of a penalty when the actual time does not reflect a violation—but the neutrality of a rounding policy does not depend on the frequency of penalties. Under the *See's Candy I* test, the court is to look at how often the application of the rounding policy results in rounding up and rounding down, not the number of times penalties are assessed or avoided as a result of rounding up and down. (*See's Candy I*, *supra*, 210 Cal.App.4th at p. 902 [a rounding policy that " 'encompasses only rounding down' " is unacceptable].)

---

2,631.583 hours recorded on their time records as a result of 'short' and 'delayed' meal periods." First, this evidence does not support Donohue's theory that any recruiter's right to a statutory meal period was "eviscerate[d]" as a result of AMN's rounding policy. In addition, as we explained at part III.B., *ante*, this evidence does not establish the existence of a triable issue of fact as to the validity of the rounding policy, because Donohue's expert did not consider, let alone offset these amounts by, evidence that recruiters *gained* compensable time by the rounding policy. In fact, AMN's expert testified that, for meal periods, the rounding of punch times to the nearest 10-minute increment "produced a net surplus of 85 work hours in paid time for the Nurse Recruiter class as a whole"; i.e., as a group the recruiters were "paid for more work time under the time-rounding policy than if they had been paid to the minute of their punch-in and punch-out times for meal periods."

32

As a final argument, Donohue relies on her deposition testimony[30] in suggesting that " 'lunches were really short' " and that she was "denied 'ample' meal periods" because of " 'downward pressures[]' from AMN . . . to constantly remain on the phones."  She further testified that she " 'was routinely discouraged from taking meal and rest breaks . . . and was in fact called back to [her] desk—over the intercom—on several occasions when attempting to take meal and rest breaks.' "  However, this testimony does not respond to the undisputed evidence that AMN had in place an effective complaint procedure for an employee to inform the employer of any potential violation, but Donohue failed to inform AMN of any such violation.  (See fn. 5, *ante*.)  Moreover, these generic comments and Donohue's related testimony do not raise a triable issue of fact given that the evidence of her specific time entries—i.e., rounded punch times—do not establish (or imply) noncompliant meal periods for which Donohue did not receive an appropriate penalty payment.  Finally, we do not consider Donohue's declaration testimony in opposition to AMN's motion to be substantial evidence of the existence of a triable issue of fact, since it is inconsistent with the following certified statement that she submitted with each timesheet:  "I was provided the opportunity to take all meal breaks to which I was entitled, *or, if not, I have reported on this timesheet that I was not provided the opportunity to take all such meal breaks*[.]"  (Italics added.)  (See *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21 [declaration from party opposing summary judgment disregarded where testimony inconsistent with prior sworn statement

---

30     As we explain at part III.H., *post*, even though the trial court excluded this testimony, we have considered it in our de novo review on appeal.

(discovery responses)]; *Turley v. Familian Corp.* (2017) 18 Cal.App.5th 969, 981 [same].)

For these reasons, the trial court did not err in granting AMN's motion for summary adjudication of AMN Issue No. 2 related to alleged meal period violations. Accordingly, we affirm the trial court's ruling as to AMN Issue No. 2.

2.    *The Trial Court Did Not Err in Denying Donohue's Motion for Summary Adjudication of Donohue Issue No. 1*

The trial court denied Donohue's motion for summary adjudication of Donohue Issue No. 1, which was directed to Donohue's meal period claim as follows:  "[AMN] possessed a standard time system in place for all members of the certified class which improperly alters the recorded meal periods.  This policy violates California law in multiple ways. . . ."

On appeal, after discussing AMN's motion for summary adjudication of the meal period claims, Donohue argues that "[*b*]*ased on the same factual record* . . . it was also error for the trial court to deny [her] motion for adjudication of the meal period issue." (Italics added.)  More specifically, Donohue argues that AMN did not rebut her evidence of meal period violations.  We disagree.

We, too, base our decision on the same factual record set forth above.  As we just explained at parts III.B. and III.C.1., *ante*, AMN's showing established *both* that AMN's rounding policy complied with California law *and* that AMN's rounding policy applied to recruiters' meal period time punches.  Accordingly, even if we assume that Donohue met her initial burden of showing that Plaintiffs experienced shortened or delayed meal

34

periods (which we do not decide), AMN met its responsive burden by establishing that, upon applying AMN's rounding policy, AMN has a complete defense to Donohue's claim of meal period violations contained in the first cause of action in the complaint. Contrary to Donohue's proposed issue to be summarily adjudicated, the evidence establishes that AMN's timekeeping system neither "improperly alter[ed] the recorded meal periods" nor violated California law.

For these reasons, the trial court did not err in denying Donohue's motion for summary adjudication of Donohue Issue No. 1 related to alleged meal period violations. Accordingly, we affirm the trial court's ruling as to Donohue Issue No. 1.

D. *The Trial Court Did Not Err in Summarily Adjudicating Donohue's Wage Statement Claim in Favor of AMN*

Section 226, subdivision (a) requires that employers like AMN provide "an accurate itemized statement in writing showing . . . (2) total hours worked by the employee, . . . and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee[.]" Where an "employee suffer[s] injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a)[,]" section 226, subdivision (e)(1) provides for an award of damages to the employee. As applicable to the present case, a recruiter-employee will be deemed to suffer injury "if the employer fails to provide accurate and complete information as required by any one or more of items (1) to (9), inclusive, of subdivision (a) *and* the employee cannot promptly and easily determine from the wage statement alone . . . [¶] . . . [t]he amount of the gross wages or net wages paid to the

35

employee during the pay period or any of the other information required to be provided on the itemized wage statement pursuant to items (2) . . . and (9) of subdivision (a)." (§ 226, subd. (e)(2)(B)(i), italics added.)

In the complaint, Donohue asserted a cause of action under section 226, alleging that AMN provided wage statements that failed to state all hours Plaintiffs worked (in violation of subd. (a)(2)) and failed to identify all applicable regular and overtime rates of pay (in violation of subd. (a)(9)). In particular, Donohue alleged that these three failures in AMN's wage statements occurred "at the designation for 'Flsa Ot' "—where AMN did not provide amounts for either the hourly rate or the number of hours.

On appeal, Donohue argues first that, with regard to the line item for "Flsa Ot" payments, the AMN wage statements do not provide accurate hourly rates, total hours worked, or inclusive dates of the pay period.[31] However, Donohue forfeited appellate consideration of the arguments related to these wage statement issues, because she failed to raise them in her opposition to AMN's motion in the trial court. (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350, fn. 12 [" 'A party is not permitted to

---

[31] According to testimony from AMN's supervisor of corporate payroll of AMN's parent company: Recruiters like Donohue were eligible to receive "different types of non-discretionary commissions, performance bonuses, and other incentive pay" in addition to their hourly compensation; these bonuses, which may be earned monthly or quarterly, are often "due and calculable only after the pay period during which the work was performed"; in the event additional overtime must be paid on such amounts, *it is not tied to the recruiter's hourly wage*, but rather is calculated by a complex formula which is "the mathematical equivalent of calculating the bonus into the [recruiter's] regular rate of pay"; and "[*t*]*hese bonus-related overtime adjustments are denoted as 'Flsa Ot' on a [recruiter's] wage statement*" and may denote a payment that comprises multiple adjustments for multiple bonuses being paid during the same pay period. (Italics added.)

change his position and adopt a new and different theory on appeal.  To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.' "].)  An appellate court "generally will not consider an argument 'raised in an appeal from a grant of summary judgment . . . if it was not raised below . . . .' "  (*Noe v. Superior Court* (2015) 237 Cal.App.4th 316, 335; accord, *North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 28-29 [permitting a change of theory on appeal from the grant of a defense summary judgment would be "manifestly unjust to the opposing parties, unfair to the trial court, and contrary to judicial economy"].)

Donohue next contends that triable issues of fact exist as to whether recruiters could " 'promptly and easily determine' " their actual hours worked from the wage statements alone, as required by subdivisions (a)(2) and (e)(2)(B) of section 226.  (Italics omitted.)  In this context, " 'promptly and easily determine' means a reasonable person would be able to readily ascertain the information without reference to other documents or information.' "  (§ 226, subd. (e)(2)(C).)  Based on this standard, Donohue argues that AMN " 'alters' its employees' work times prior to payment, but does not explain to its employee that it is doing so."  In support of this statement, Donohue cites AMN's response to Donohue's separate statement and a copy of Donohue's wage statement from a pay period in 2013.  However, because a separate statement is "mere assertion" and "not itself evidence of anything" (*Stockinger v. Feather River Community College* (2003) 111 Cal.App.4th 1014, 1024 (*Stockinger*), disapproved on another ground in *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 634, fn. 7), the separate

37

statement cannot raise a triable issue of material fact. Likewise, a wage statement without more does not raise a triable issue of material fact.

Even if we were to consider the evidence cited in the separate statement on which Donohue relies, the result is no different. Donohue's separate statement citation references the following material facts *which AMN does not dispute*: "In its Wage Statements, AMN sometimes represents 20 minutes of work-time as '.34' "; "In its Wage Statements, AMN sometimes represents 20 minutes of work-time as ".33' "; "In its Wage Statements, AMN never provides its nonexempt employees with any sort of written explanation which states that both '.33' and '.34' can mean 20 minutes of work-time"; "20 minutes is exactly one-third of 60 minutes"; and "33 is not exactly one-third of 100."[32] (Bolding and underscoring omitted.) Even if we assume that, by these statements, AMN failed to provide accurate and complete information as required by section 226, subdivision (a), Donohue forfeited appellate consideration of the issue, because she did not present argument, evidence, or authority as to how or why a recruiter is unable to "promptly and easily determine from the wage statement alone" the actual time worked— which is the required showing before an employee can be "deemed to suffer injury" according to subdivision (e)(1)(B) of section 226.[33] (Cal. Rules of Court,

---

[32]  Donohue does not tell us which of these statements—or how any of these statements—raises a triable issue of material fact.

[33]  In the trial court, Donohue submitted two declarations, one in opposition to AMN's motion and one in support of her motion. She did not mention any confusion or inability to determine the time worked based on the information contained on her wage

rule 8.204(a)(1)(B) [each point in a brief must be supported "by argument and, if possible, by citation to authority"]; see *Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 181 [failure to present coherent argument forfeits appellate review].)

In her reply brief on appeal, Donohue suggests that, because AMN converted the hours and minutes to hours and decimal hours, she or other recruiters generally were unable to promptly and easily determine the actual time worked.[34] We reject such a suggestion. First, Donohue forfeited appellate consideration of the argument, because she raised it for the first time in her reply brief on appeal. (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11 ["Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant."]; *Padron v. Watchtower Bible and Tract Society of New York, Inc.* (2017) 16 Cal.App.5th 1246, 1267 ["Any new substantive arguments raised by [an appellant] in its reply brief are deemed forfeited."].) In any event, even if we were to consider Donohue's tardy presentation, Donohue did not include evidence or authority for the suggestion that, by the use of decimal hours rather than minutes, AMN did not provide a wage statement from which

---

statement; nor did she present any *evidence* of any other recruiter who was confused or unable to determine the time worked.

34     For example, actual time of 1 hour and 30 minutes is converted to 1.5 hours, and actual time of 1 hour and 40 minutes is converted to 1.67 hours.

the amount of time worked can be, in the language of section 226, subdivision (e)(1)(B), "promptly and easily determined."[35]

Accordingly, we affirm the trial court's ruling as to AMN Issue No. 4.

E.      *The Trial Court Did Not Err in Summarily Adjudicating Donohue's
         Overtime Claim in Favor of AMN*

Section 510, subdivision (a) requires employers like AMN to pay employees like Plaintiffs "one and one-half times the regular rate of pay" for "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek."

---

[35]      In her reply brief on appeal, Donohue refers us to two pages of a separate statement (with five separately numbered paragraphs), a copy of one of Donohue's wage statements, and one page of the deposition transcript of a witness, C.B.  The separate statement is neither evidence nor argument.  (*Stockinger, supra*, 111 Cal.App.4th at p. 1024.)  Although the copy of the wage statement contains a decimal hour, Donohue failed to present evidence or argument that she or any of Plaintiffs could not promptly and easily determine the amount of time worked.

At her deposition, C.B. testified that, in order to determine how many minutes .83 of an hour is, she would have to refer to a chart, although she guessed that it was 50 minutes.  However, Donohue has not explained or provided evidence as to who C.B. is, and because Donohue did not cite this evidence until her reply brief on appeal, we decline to consider it.  In any event, Donohue does not explain, or attempt to explain, how or why she or any recruiter was not able to promptly or easily determine the amount of time worked when it was expressed in decimal hours (.83 of an hour) rather than minutes (50 minutes).  Given that only basic skills in arithmetic are required to convert minutes to decimal hours and decimal hours to minutes, we will not infer a triable issue of material fact without evidence that any recruiter was delayed or had difficulty in determining the amount of time worked.

As part of the second cause of action in the complaint, Donohue alleged that AMN failed to pay required overtime wages in violation of section 510, subdivision (a).[36] More specifically, Donohue alleged the following two types of overtime payment violations: (1) " 'time shaving,' " which included both the rounding of time when recruiters punched in and out, and the conversion of time that was recorded in minutes to decimal hours for purposes of multiplying the amount of time by the overtime hourly rate; and (2) failure to include " 'Referral Bonus[es],' " " 'monthly commissions,' " and " 'RAMP' pay"[37] in calculating commissions and nondiscretionary bonuses when determining a recruiter's *regular* rate of pay, which results in an improper rate of *overtime* pay.

However, on appeal, Donohue does not mention these two alleged overtime violations. Instead, she argues only that the trial court erred in adjudicating her overtime claim based on what she characterizes as AMN's "makeup time" defense.[38] Thus,

---

[36]    The second cause of action also contains a claim for failure to pay minimum wage in violation of section 1197, but on appeal Donohue does not mention, let alone raise an argument, related to the minimum wage claim or section 1197.

[37]    Donohue does not tell us, either in the complaint or her appellate briefing, what she considers referral bonuses, monthly commissions, or RAMP pay.

[38]    Without deciding whether the makeup time argument is part of Donohue's claim or AMN's defense (which the parties dispute), it is based on section 513, which provides in part: "If an employer approves a written request of an employee to make up work time that is or would be lost *as a result of a personal obligation of the employee*, the hours of that makeup work time, if performed in the same workweek in which the work time was lost, may not be counted towards computing the total number of hours worked in a day for purposes of the overtime requirements specified in Section 510 . . . . An employee shall provide *a signed written request* for each occasion that the employee makes a

41

Donohue did not meet her burden of establishing a triable issue of material fact in response to AMN's initial showing. (*Aguilar, supra*, 25 Cal.4th at p. 850-851.)

We are aware that, in granting AMN's motion for summary adjudication directed to the overtime claim, the trial court included as an *alternative* ruling that Donohue was required to, but did not, plead that AMN's makeup time policy resulted in overtime violations. However, the court's *principal* ruling was *on another ground*—namely that, because AMN's application of its rounding policy complied with California law, "AMN's methods of calculating and paying overtime compensation are lawful"; yet Donohue does not argue on appeal that the court erred in so ruling on summary adjudication. Stated differently, even if we assume that the trial court erred in denying Donohue's motion as to the makeup time defense, any such error would be harmless (see discussion of prejudice at pt. III.H., *post*): Because AMN was entitled to summary adjudication on its motion directed to the overtime claim on grounds unrelated to the issue of makeup time, the result on the overtime claim is unaffected by the court's ruling, even if erroneous, that Donohue did not plead that AMN's makeup time policy resulted in overtime violations.

Accordingly, we affirm the trial court's ruling as to AMN Issue No. 1—without expressing an opinion as to the effect of AMN's makeup policy on Donohue's overtime claim.

---

request to make up work time pursuant to this section. . . ." (Italics added.)

Donohue assures us on appeal that AMN's allegedly improper designation of makeup time is not part of her claim for overtime. She explains that her overtime claim is based solely on the "allegation . . . that overtime was not paid in some instances where over 8 hours in a day were worked by employees." AMN therefore properly directed its motion to the allegations in the complaint, where Donohue alleged improper overtime payments based on time-shaving (rounding of time and use of decimal hours) and failure to include certain commissions or bonuses in the calculation of regular time, and therefore, overtime—none of which involved the application of makeup time.

42

F.  *The Trial Court Did Not Err in Summarily Adjudicating Donohue's Rest Period Claim in Favor of AMN*

A rest period mandated by state law, which includes Industrial Welfare Commission wage orders, "shall be counted as hours worked, for which there shall be no deduction from wages." (§ 226.7, subd. (d).) In general, California employers are required to provide rest periods of a specified minimum duration—e.g., 10 minutes of paid rest for every four hours worked; and for shifts of less than four hours, a 10-minute rest period after three and a half hours. (Tit. 8, §§ 11010-11150, subd. (12)(A) & § 11160, subd. (11)(A).) An employer is precluded from requiring an employee to work during a rest period, and an employer that fails to provide such a required rest period "shall pay" each affected employee one hour's pay for each workday the employee was not provided the appropriate rest period. (§ 226.7, subds. (b), (c); tit. 8, §§ 11010-11150, subd. (12)(B) & § 11160, subd. (11)(D).) In the present action, Donohue alleges that, by failing to have a compliant rest period policy, AMN violated section 226.7, subdivision (b), and title 8, section 11040, subdivision (12), which entitled Plaintiffs to recover damages.

In its motion, AMN sought to summarily adjudicate the rest period claim "because there is no evidence of a uniform policy or practice to deny rest periods." Donohue argues that the trial court improperly granted the motion by relying "on a generalization that Ms. Donohue took 'some' rest breaks, . . . improperly ignor[ing] all of her testimony in which she said she was often *denied* other rest breaks." Donohue characterized the pertinent allegations in the complaint to be "that AMN did not provide *all* legally-

43

compliant rest periods due," expressly asserting that "[t]he testimony in the record confirmed [her] allegations to be true."[39] By this argument, Donohue necessarily acknowledges that AMN met its initial burden, suggesting only that she met her responsive burden of establishing the existence of a triable issue of material fact.

In response to AMN's showing that its written policy complies with California law (which Donohue does not challenge on appeal), Donohue refers us to one page of her declaration and eight pages of her deposition transcript and argues that "(1) she and others were frequently denied rest breaks altogether when work got too busy, and (2) that [AMN] would often interrupt her (call her back to work) before her rest period was finished." The problem with Donohue's argument is that the *evidence* on which she relies does not establish either a general noncompliant company policy or the denial of any specific required rest period(s).

In her declaration, Donohue testified that she "was routinely discouraged from taking meal and rest breaks" and even called back to her desk "on several occasions" when attempting to take a rest break.[40] However, neither of these events establishes

---

[39]    Citing Evidence Code section 356, Donohue argues on appeal that, because the court considered a portion of Donohue's deposition testimony, "[t]he rule of completeness requires *all* of Ms. Donohue's testimony on the subject of rest periods be considered." We disagree. Evidence Code section 356 provides in part: "Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject *may be inquired into by an adverse party*[.]" (Italics added.) The trial court was not required to consider deposition testimony sua sponte, and there is no indication that the trial court did not consider any evidence that Donohue properly cited.

[40]    As we explain at part III.H., *post*, even though the trial court excluded this testimony, we have considered it in our de novo review on appeal.

either a noncompliant company policy or the denial of a compliant rest period (or, in the event of a noncompliant rest period, nonpayment of the required premium).

At her deposition Donohue expressly testified that AMN allowed recruiters to take rest breaks, commenting only that taking such breaks "was highly frowned upon" and "it was not a commonality to take rest periods at all." Significantly, Donohue could not remember what she was told or what was communicated to her to cause her to believe that taking rest breaks was uncommon or disapproved. Although Donohue later identified a "recruitment manager" in "upper division" who told her "just conversationally" that she should make telephone calls instead of taking breaks, Donohue confirmed that the manager never stated that taking a rest period was " 'frowned upon' " or otherwise precluded. All of that said, Donohue testified unequivocally that *no one*— and repeated later that she could not remember any *manager or supervisor* who—ever told her that she could not take a rest break.

For these reasons, the evidence on which Donohue relies is insufficient to establish the existence of a triable issue of material fact in response to AMN's initial showing that, in the terms of the issue to be summarily adjudicated, "there is no evidence of a uniform policy or practice to deny rest periods." Accordingly, we affirm the trial court's ruling as to AMN Issue No. 3.

G.    *The Trial Court Did Not Err in Summarily Adjudicating Donohue's PAGA Claim in Favor of AMN*

Section 2699, subdivisions (a) and (g)(1), which are part of PAGA (§ 2698 et seq.), allow "an aggrieved employee" to recover civil penalties for certain violations of

45

the Labor Code.[41]  (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 980.)  Under PAGA, an " 'aggrieved employee' " is defined as an employee "against whom one or more of the alleged [Labor Code] violations was committed."  (§ 2699, subd. (c).)

" 'Before the PAGA was enacted, an employee could recover damages, reinstatement, and other appropriate relief but could not collect civil penalties.  The Labor and Workforce Development Agency . . . collected them.  The PAGA changed that.' "  (*Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 578; accord, *Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1126 ["Section 2699, subdivision (a) . . . 'permits aggrieved employees to recover civil penalties that previously could be collected only by [the agency' "].)  "In PAGA, the Legislature created an enforcement mechanism for aggrieved employees to file representative actions to recover penalties in cases in which there is no private cause of action as an alternative to enforcement by the Labor Commissioner."  (*Rope v. Auto-Chlor System of Washington, Inc.* (2013) 220 Cal.App.4th 635, 650, superseded in part on another issue by statute.)  Under PAGA, "the aggrieved employee acts as the proxy or

---

41     "Notwithstanding any other provision of law, any provision of th[e Labor C]ode that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency . . . for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3."  (§ 2699, subd. (a).)
       "[A]n aggrieved employee may recover the civil penalty described in subdivision (f) [, which deals with civil penalties,] in a civil action pursuant to the procedures specified in Section 2699.3 filed on behalf of himself or herself and other current or former employees against whom one or more of the alleged violations was committed."  (§ 2699, subd. (g)(1).)

46

agent of state labor law enforcement agencies, representing the same legal right and interest as those agencies, in a proceeding that is designed to protect the public, not to benefit private parties."  (*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1003.)

In the seventh cause of action of the complaint, Donohue pleaded that she complied with PAGA's administrative prefiling requirements (see § 2699.3, subd. (a)) and alleged that, under PAGA, she was an aggrieved employee asserting a claim against AMN based on violations of specified Labor Code sections and Industrial Welfare Commission wage orders dealing with:  straight time; overtime; meal periods; rest periods; wage statements; and amount of compensation owed upon termination of employment (based on proof of the other alleged violations).  The trial court granted AMN's motion for summary adjudication of Donohue's PAGA cause of action, because—in the language of the issue to be summarily adjudicated—each of the PAGA claims "is derivative of [Donohue's] other claims under the California Labor Code, which also fail[.]"  The trial court did not err.

On appeal, Donohue argues otherwise, contending that, unlike a class action plaintiff who must show a common policy or practice that results in Labor Code (or related) violations, a PAGA plaintiff need only prove the existence of a violation.  In support, Donohue relies on a language from *Williams v. Superior Court* (2017) 3 Cal.5th 531 (*Williams*) that, in a PAGA action, "recovery on behalf of the state and aggrieved employees may be had for each violation, whether pursuant to a uniform policy or not."

(*Williams,* at p. 559.) Even if we accept Donohue's authority,[42] Donohue did not establish that *she* suffered harm as a result of AMN's violation of the Labor Code.

Stated differently, Donohue did not establish that *she* was an aggrieved employee—a prerequisite to asserting a PAGA claim (§ 2699, subds. (a), (g)(1))—because she did not establish that "one or more of the alleged [Labor Code] violations was committed" against her (§ 2699, subd. (c)). The parties and the trial court discussed this issue in terms of analyzing whether Donohue's PAGA claims were "derivative" of her substantive claims for Labor Code violations.

In its separate statement in support of its motion to summarily adjudicate Issue No. 7, AMN proffered the following undisputed material fact: "All claims for PAGA penalties that [Donohue] has brought in this lawsuit are derivative of her other causes of action for violations of the Labor Code." As supporting evidence, AMN relied on copies of Donohue's administrative prefiling letters and certain allegations in her complaint in which Donohue expressly contended that her PAGA claims were *entirely* derivative of

---

[42] The procedural posture in *Williams* makes the case inapplicable to the present appeal. *Williams* was a discovery dispute, where the principal issue was whether the PAGA plaintiff had to show that he had been subject to Labor Code violations *prior* to obtaining discovery from the defendant employer regarding contact information for other California employees. (*Williams, supra*, 3 Cal.5th at pp. 538, 559.) The court concluded that the identities of the employer's other California employees were discoverable without first requiring that the PAGA plaintiff establish that he had been subject to Labor Code violations. (*Williams,* at p. 558 ["the merits of one's case has never been a threshold requirement for discovery"].) As applicable to the present appeal—and as we discuss in the text, *post*—in dictum the court explained that, *in order to recover on the merits* as opposed to merely obtaining discovery, a PAGA plaintiff must establish standing, which requires a showing the PAGA plaintiff "suffered harm" as a result of the employer's violation of the Labor Code. (*Williams,* at p. 559, citing § 2699.)

her substantive claims under the Labor Code. Significantly, in her response to AMN's separate statement, Donohue did not dispute that her claims for PAGA penalties were derivative of her substantive claims for Labor Code violations.[43] Consistently, in her memorandum of points and authorities in opposition to AMN's motion in the trial court, Donohue again specifically acknowledged that her PAGA claims were derivative of her substantive Labor Code claims. Indeed, instead of presenting any independent argument related to the PAGA cause of action, Donohue merely asked the court to "Please see the above arguments"—thereby confirming that her PAGA claims were, in fact, derivative of her other Labor Code claims.

Donohue suggests that the holding in *Lopez v. Friant & Associates, LLC* (2017) 15 Cal.App.5th 773 (*Lopez*) saves her PAGA claim (§ 2699) for wage statement violations (§ 226, subd. (a)).[44] More specifically, she argues that, under *Lopez*, the trial court here erred in ruling that, because AMN was entitled to judgment as a matter of law on her individual (class) claims under section 226, AMN was also entitled to judgment as a

---

[43] Actually, Donohue did not include *any* response to AMN's proposed undisputed material fact. AMN noted this nonresponse in its reply to Donohue's opposition, contending that, because "[Donohue] has provided no response to this fact[,] . . . it therefore remains undisputed." Donohue did not argue otherwise at the hearing (or seek leave to amend her prior response), and she does not contend otherwise on appeal.

[44] Because this is the argument that Donohue attempted to raise in her motion for reconsideration, which the trial court struck after entry of judgment, Donohue has not been prejudiced by the trial court's failure to rule on the motion.

49

matter of law on her representative (PAGA) claim under section 2699.[45]  However, all

*Lopez* held was that a plaintiff who asserts a *representative* claim for *civil penalties* under

PAGA (§ 2699) based on violations of section 226, subdivision (a), need not prove an

*individual* claim for *statutory damages* under the Labor Code (§ 226, subd. (e)) based on

the same violations of section 226, subdivision (a).  (*Lopez,* at pp. 784-786.)  Although a

representative PAGA claim for penalties (§ 2699) and an individual claim for damages

(§ 226, subd. (e)) *both* require proof of a violation of the requirements for itemized wage

statements under section 226, subdivision (a), the *representative* claim requires only

proof that the employer's wage statement violated section 226, subdivision (a), whereas

the *individual* claim requires proof that the plaintiff suffered an " 'injury' resulting from a

'knowing and intentional' violation of section 226[, subdivision ](a)."  (*Lopez,* at pp. 784,

784-786.)

In *Lopez*, the defendant employer sought summary judgment on the *representative*

(PAGA) claim for penalties (§ 2699) based on evidence and argument that the plaintiff

employee could not establish an *individual* claim for damages (§ 226, subd. (e)) based on

the same alleged section 226, subdivision (a) wage statement violations.  (*Lopez, supra*,

---

[45]    In the individual (class) cause of action for damages under section 226, subdivision (e), Donohue alleged that AMN failed to include in employees' wage statements "all hours worked" in violation of subdivision (a)(2) and failed to identify "all applicable regular and overtime rates of pay" in violation of subdivision (a)(9).
    In the representative (PAGA) cause of action under section 2699 for penalties based on section 226 violations, Donohue alleged that AMN failed to include in employees' wage statements "the accurate total number of overtime hours worked" in violation of subdivision (a)(2), the "accurate net or gross wages, including overtime wages, earned" in violation of subdivision (a)(1), and "the name and address of the legal entity that is the employer" in violation" of subdivision (a)(8).

15 Cal.App.5th at pp. 776-777.) In reaching its conclusion otherwise, the *Lopez* court stated only that a PAGA *representative* claim for penalties based on a violation of subdivision (a) of section 226 is not derivative of an *individual* claim for damages based on a violation of subdivision (e) of section 226 because the *individual* claim requires proof of a knowing and intentional violation of subdivision (a), whereas the *representative* claim does not. (*Lopez,* at p. 786.) In contrast, here, because Donohue's *individual* (class) claims failed on grounds *other than* the lack of proof of a knowing and intentional violation of section 226, subdivision (a)—namely, on the basis that Donohue did not meet her burden of establishing an issue of material fact as to the *existence* of a section 226, subdivision (a) violation (see pt. III.D., *ante*)—*Lopez* is not controlling.[46]

In conclusion, based on the record and our rulings on her individual (class) Labor Code claims, *ante*, Donohue did not meet her burden of establishing trial court error in granting summary adjudication in favor of AMN on Donohue's representative (PAGA) cause of action. Stated differently, in the language from her opening brief on appeal, Donohue did not meet her burden of establishing an issue of material fact as to whether

---

[46] At oral argument, counsel for Donohue presented argument based on *Huff v. Securitas Security Services USA, Inc.* (2018) 23 Cal.App.5th 745 (*Huff*)—a case that was decided many months after the filing of her reply brief. We disapprove of counsel presenting this authority without sufficient time for AMN to respond—despite six months and three rounds of supplemental briefing after the filing of *Huff* and before oral argument. However, since the case does not help Donohue, we will consider it without requesting supplemental briefing from AMN. In *Huff*, the appellate court held that an employee who is affected by at least one Labor Code violation may pursue PAGA penalties for unrelated Labor Code violations by the same employer. (*Huff,* at pp. 753-754.) Here, as we concluded in the text, *ante*, Donohue has not established the right to recover for *any* Labor Code violation; thus, even under *Huff*, she may not pursue PAGA penalties for *any* Labor Code violation(s).

51

she "individually experienced" any particular Labor Code violation. (See *Huff, supra*, 23 Cal.App.5th at p. 753 [PAGA plaintiff must be "affected by at least one Labor Code violation"]) In response to AMN's showing—which included Donohue not disputing the proffered material fact that her representative (PAGA) claims were derivative of her individual (class) Labor Code claims[47]—Donohue did not establish either that she suffered a Labor Code violation or that her PAGA claims were not derivative of her individual (class) claims.

Accordingly, we affirm the trial court's ruling as to AMN Issue No. 7.

H.      *The Trial Court Did Not Abuse its Discretion in Sustaining AMN's Evidentiary Objections to Certain of Donohue's Evidence*

In ruling on the cross-motions, the trial court sustained AMN's evidentiary objections to the declarations of Donohue and Clint S. Engleson, one of Donohue's attorneys. Donohue contends on appeal that these rulings are erroneous and, on that basis, she is entitled to a reversal of the judgment. We disagree.

Generally, we review for an abuse of discretion of the trial court's ruling on the exclusion of evidence in summary judgment proceedings. (*Park v. First American Title Co.* (2011) 201 Cal.App.4th 1418, 1427.) A trial court abuses its discretion only when, in

_____

[47]    As we explained at footnote 45, *ante*: In the individual (class) claim for damages under section 226, subdivision (e), Donohue alleged violations of *subdivisions (a)(2) and (a)(9)* of section 226; whereas in the representative (PAGA) claim for penalties under section 2699, Donohue alleged violations *subdivisions (a)(1), (a)(2), and (a)(8)* of section 226—which includes two alleged violations that were not part of the individual (class) claim. Donohue does not suggest that the PAGA claim was not derivative of the class claims because the two sets of claims alleged *different* violations of section 226, subdivision (a).

its exercise, the ruling is arbitrary or the trial court "exceeds the bounds of reason, all of the circumstances before it being considered." (*Denham, supra*, 2 Cal.3d at p. 566.) That said, in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, our Supreme Court expressly left open the question of whether such evidentiary rulings are reviewed under a de novo or an abuse of discretion standard. (*Id.* at p. 535.) The parties disagree as to which standard we are to apply.

Under either standard, however, an appellant who seeks a reversal based on the erroneous exclusion of evidence in summary judgment proceedings must establish how the error resulted in a "miscarriage of justice," often referred to as prejudice. (Cal. Const., art. VI, § 13;[48] Code Civ. Proc., § 475;[49] *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069.) For purposes of this analysis, a "miscarriage of justice" may be found on appeal " ' "only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." ' "

---

[48] "No judgment shall be set aside . . . in any cause, on the ground of . . . the improper . . . rejection of evidence . . . , unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has *resulted in a miscarriage of justice.*" (Cal. Const., art. VI, § 13, italics added.)

[49] "No judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it *shall appear from the record* that such error, ruling, instruction, or defect *was prejudicial,* and also that by reason of such error, ruling, instruction, or defect, the said party complaining or appealing sustained and suffered substantial injury, and that *a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed.* There shall be no presumption that error is prejudicial, or that injury was done if error is shown." (Code Civ. Proc., § 475, italics added.)

(*Pool,* at p. 1069; accord, *San Diego Gas & Electric Co. v. Schmidt* (2014) 228 Cal.App.4th 1280, 1301-1302.)  In this context, "reasonably probable" means "more than an *abstract possibility*."  (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715.)  Prejudice is not presumed (Code Civ. Proc., § 475), and the appellant bears the burden of establishing *both* error *and* a miscarriage of justice.  (*Denham, supra*, 2 Cal.3d at p. 566.)

Without deciding which standard of review applies, we assume that the challenged evidence should have been admitted.[50]  As we explain, however, because Donohue did not meet her burden of establishing prejudice, any error in excluding the evidence is harmless.

1. *Donohue's Testimony*

In support of her opposition to AMN's motion directed to meal periods and rest periods, Donohue testified as follows:

> "I understand AMN is arguing that I somehow 'certified' that I received all meal and rest breaks while working for the company by clicking a box to that effect when submitting my timecard.  This is not the case.  To confirm, I could not submit my timecard—and thus get paid—without clicking this box.  Because I had no choice but to click this box, my doing so does not 'certify' the fact that I received meal and rest breaks.  As I have testified multiple times, I was routinely discouraged from taking meal and rest breaks while I worked for AMN and was in fact called back to my desk— over the intercom—on several occasions when attempting to take meal and rest breaks."

---

[50]    Indeed, in our discussions of both the meal period and rest period issues at parts III.C.1. & III.F., respectively, *ante*, we considered applicable portions of Donohue's declaration testimony that the trial court excluded.

54

AMN objected to this testimony on numerous grounds. The trial court excluded the testimony without stating the basis of its ruling.

On appeal, Donohue contends that this testimony is "relevant," "based on personal knowledge," and "simply expand[s] on and clarif[ies] what she had meant by her prior deposition testimony." She then argues that the exclusion of this testimony "was highly prejudicial, as it created a multitude of triable issues of fact with regard to the meal and rest period claims." However, by acknowledging that this testimony is cumulative and by failing to suggest how this testimony supports a specific triable issue of material fact, Donohue has not met her burden of establishing prejudice.

Accordingly, Donohue is not entitled to relief based on the trial court's exclusion of Donohue's declaration testimony.

2.    *Engleson's Testimony*

In support of her opposition to AMN's motion, Donohue submitted the declaration from one of her attorneys, Engleson. In his declaration, Engleson provided substantive testimony, as well as foundational/authentication testimony related to 16 exhibits. AMN objected to the declaration and to certain of the exhibits on various grounds, and the trial court sustained AMN's evidentiary objections on the basis that most of the declaration was "an improper attorney declaration." The court did not rule on the objections to any of the exhibits.

On appeal, Donohue does not challenge the ruling that Engleson's declaration was an improper attorney declaration. She challenges only that portion of the court's ruling that sustained AMN's objections to the 16 exhibits. However, Donohue does not attempt

55

to explain (let alone succeed in explaining) how she was prejudiced by the exclusion of any particular exhibit.

Accordingly, Donohue is not entitled to relief based on the trial court's ruling sustaining AMN's objection to Engleson's declaration.

I.      *Donohue Did Not Retain Her Individual Claims*

In her final argument, *without a record reference*, Donohue contends that, because "AMN's notice of summary judgment motion only seeks to adjudicate the certified class action claims, . . . it was error for the trial court to adjudicate Ms. Donohue's ***individual*** claims for meal break, rest break, unpaid compensation and wage statement violations." (Original italics and bolding)  We emphasize "without a record reference," because the record discloses that AMN gave notice of and moved for "summary judgment or, in the alternative, summary adjudication, in its favor and *against* the certified class and *named plaintiff Kennedy Donohue in her individual capacity*, on Plaintiffs' Second Amended Complaint, and as to each cause of action therein."  (Italics added.)

Accordingly, Donohue's argument that AMN's motion did not seek to adjudicate her individual claims is frivolous, and we reject it.

56

## IV.  DISPOSITION

The judgment is affirmed.  AMN is entitled to its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

IRION, J.

WE CONCUR:


HALLER, Acting P. J.


O'ROURKE, J.

57

Filed 12/10/18

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KENNEDY DONOHUE, | D071865 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2014-00012605-CU-OE-CTL) |
| AMN SERVICES, LLC, | |
| Defendant and Respondent. | |

THE COURT:

The opinion in this case filed November 21, 2018 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the requests pursuant to California Rules of Court, rule 8.1120(a), for publication are GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

HALLER, Acting P. J.

Copies to: All parties