Filed 2/2/23

# CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THOMAS ROCHA et al., | B322599 |
| Plaintiffs and Appellants, | |
| v. | (Fresno County Super. Ct. No.15CECG03393) |
| U-HAUL CO. OF CALIFORNIA et al., | |
| Defendants and Respondents. | |

　　　　APPEAL from orders and the judgment of the Superior Court of Fresno County, Rosemary T. McGuire, Judge.  Affirmed in part and reversed in part.

　　　　Law Office of Dean B. Gordon and Dean B. Gordon for Plaintiffs and Appellants.

　　　　Norton Rose Fulbright US and Ryan T. McCoy for Defendants and Respondents.

---

　　　　* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of the Discussion *post*, parts A and B.1.

Plaintiffs and appellants Thomas Rocha and his brother Jimmy Rocha (the brothers) appeal following a judgment affirming an arbitration award that resolves an employment dispute between the brothers, their former employer, defendant and respondent U-Haul Co. of California (U-Haul), and their former manager at U-Haul, defendant and respondent Don Sandusky. On appeal, the brothers challenge the court's order compelling their dispute to arbitration, arguing that the arbitration agreement they signed with U-Haul is unconscionable and thus unenforceable. We disagree and, accordingly, affirm the order compelling arbitration.

The brothers also challenge the court's order, issued before the court ordered the matter to arbitration, denying them leave to amend their complaint. The proposed amendment includes a Labor Code cause of action against Sandusky for unpaid wages regarding work the brothers allegedly performed at Sandusky's residence solely for his personal benefit. We see no basis on which the court could deny the brothers leave to assert such a claim.

The brothers' proposed amendment also includes a claim for relief under California's Private Attorney General Act (Lab. Code, § 2698 et seq.)[1] (the PAGA)[2] based on the Labor Code violations by U-Haul and/or Sandusky reflected in the proposed amended

---

[1] Unless otherwise indicated, all further statutory citations are to the Labor Code.

[2] The PAGA authorizes certain "aggrieved employee[s]" to act as private attorneys general and collect "civil penalt[ies]" for Labor Code violations, where the Labor and Workforce Development Agency (LWDA) has been notified and does not itself take action. (See Lab. Code, § 2699, subd. (a).) A PAGA claim is technically "an enforcement action between the LWDA and the employer," with the plaintiff acting as a proxy for the government. (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 86 (*Kim*).)

complaint. But the brothers cannot establish PAGA standing to bring a claim based on Labor Code violations by U-Haul already alleged in the operative complaint, because the arbitrator found no such violations occurred, and that finding has issue preclusive effect.  It would thus have been futile to allow the brothers to allege such a PAGA claim.  The arbitrator's finding does not affect the brothers' ability to establish PAGA standing based on the proposed alleged Labor Code violation by Sandusky involving unpaid wages, however, and we see no other fatal deficiencies in the proposed PAGA claim against Sandusky.

Therefore, we conclude the court abused its discretion in denying the brothers leave to amend their complaint to add both PAGA and non-PAGA claims against Sandusky based on the unpaid wages violation they propose to allege.  Accordingly, we reverse the court's order to the extent it denies leave to amend to add such claims and reverse the judgment as it applies to Sandusky.  In all other respects, we affirm the orders and judgment.

## FACTS AND PROCEEDINGS BELOW

### A. The Brothers Sign an Arbitration Agreement with U-Haul as a Term of Employment

U-Haul hired Thomas Rocha as a mechanic in 1997.  In 2003, the company implemented an employment dispute resolution policy, which required that all employees sign an arbitration agreement as a condition of continued employment.  As part of this policy, Thomas Rocha signed a one-page document entitled "U-Haul Employee Agreement to Arbitrate."

3

Later in 2003, U-Haul hired Jimmy Rocha as a mechanic as well.[3]

U-Haul revised the company's employee dispute resolution policy in 2007 and 2013, and in both instances informed the brothers they were required to sign an updated arbitration agreement as a term of continued employment at U-Haul. They both did so.

The 2013 iteration of the arbitration agreement is the one at issue in this appeal. It is a three-page document, the first two pages of which contain a "memorandum" bearing the title, "Notice to Employees About U-Haul's Employment Dispute Resolution [EDR] Policy." This portion of the agreement "explains the procedures, as well as how the arbitration policy works as a whole." The final page of the document bears the caption "U-HAUL EMPLOYEE AGREEMENT TO ARBITRATE" and requires the electronic signature of the employee. We shall refer to the entirety of this three-page document as "the arbitration agreement."

Each of the brothers submitted his electronic signature on the arbitration agreement in 2013.

The following key language appears in the EDR policy portion of the arbitration agreement: "Please take the time to read this material. IT APPLIES TO YOU. It will govern all existing or future disputes between you and U-Haul . . . or its parent, subsidiary, sister or affiliated companies or entities, and each of its and/or their employees, officers, directors or agents ('U-Haul') that are related in any way to your employment

---

[3] The record does not reflect whether Jimmy Rocha signed an arbitration agreement upon his hiring in 2003, but it is undisputed he signed subsequent arbitration agreements with U-Haul, as noted below.

with U-Haul . . . except for charges filed with the National Labor Relations Board [NLRB].  [¶] . . . [¶]  The EDR . . . covers all disputes relating to or arising out of employment with U-Haul . . . or the termination of that employment. . . . [¶] Your decision to accept employment or to continue employment with U-Haul . . . constitutes your agreement to be bound by the EDR. . . .  [B]oth you and U-Haul are bound to use the EDR as the only means of resolving any employment-related disputes.  This mutual agreement to arbitrate claims also means that both you and U-Haul forego any right either may have to a judge or jury trial on claims relating in any way to your employment. . . . [¶]  As permitted by applicable law, you and U-Haul also agree to forego and waive any right to bring an action as a private attorney general."  (Underscoring omitted.)  It further provides as follows regarding the scope of arbitration pursuant to the agreement:  "The arbitration process is limited to disputes, claims or controversies that a court of law would be authorized to entertain or would have jurisdiction over to grant relief and that in any way arise out of, relate to or are associated with your employment with U-Haul . . . or the termination of your employment.  The parties in any such arbitration will be limited to you and U-Haul, unless you and U-Haul agree otherwise in writing."

The EDR policy portion also provides that the Federal Arbitration Act (9 U.S.C. § 1 et seq.) (FAA) shall govern the agreement, and that if the FAA cannot apply, applicable state arbitration statutes (that is, those of California) shall govern. In addition, "[t]he Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association ('AAA') in place at the time of the dispute" govern "the procedures to be used in arbitration."  The EDR policy provides the website from which

5

one can obtain these AAA rules and procedures, and provides a link to review the procedures before signing, if desired.

The policy also speaks to the finality of an arbitration award, noting generally that "[a]n impartial and independent arbitrator chosen by agreement of both you and U-Haul will be retained to make a final decision on your claim, based on applicable law. The arbitrator's decision is final and binding on you and U-Haul."

As to the funding of the arbitration proceedings, the EDR policy provides: "Your share of such AAA filing and arbitrator fees shall not exceed the maximum fee established by the applicable AAA rules or the amount equal to your local court civil filing fee, whichever is less. U-Haul will pay all of the remaining fees and administrative costs of the arbitrator and the AAA unless, in accordance with applicable law, an arbitrator orders a different allocation of those fees and costs." Finally, the arbitration agreement contained a severability clause, indicating "the arbitrator or a court may sever any part of the EDR procedures that do not comport with the [FAA] or applicable case law."

The final page of the arbitration agreement, which each of the brothers electronically signed, reflects a general acknowledgment and acceptance of the EDR policy as follows: "I acknowledge that I have been given the opportunity to receive and review a copy of the [EDR] [p]olicy, and have been advised to consult a legal advisor of my own choice about the EDR. I agree that it is my obligation to make use of the EDR and to submit to final and binding arbitration any and all claims and disputes (except for charges filed with the [NLRB]) that are related in any way to my employment or the termination of my employment with U-Haul . . . . I understand that, unless otherwise required by law or contract, final and binding arbitration will be the sole and exclusive remedy for any such claim or dispute . . . and that, by agreeing to use arbitration to resolve my

dispute, both U-Haul and I agree to forego any right we each may have had to a judge or jury trial on issues covered by the EDR."

This final signature page also includes more specific acknowledgments of key aspects of the EDR policy, including those highlighted above. Namely, it expressly acknowledges the type of disputes that fall within the scope of the arbitration obligation the signatory is assuming; that only the signing employee, U-Haul, U-Haul's related companies, and U-Haul employees/officers will be bound to arbitrate such disputes; that the FAA will govern and AAA procedural rules will apply; that the employee has been given "sufficient information about and links to" these rules; and that the employee's "maximum out-of-pocket expenses" associated with an arbitration under the agreement "shall not exceed the maximum fee established by applicable AAA rules or the amount equal to my local court civil filing fee, whichever is less."

### B. U-Haul Terminates the Brothers and They Sue

The brothers filed administrative complaints with the federal Equal Employment Opportunity Commission alleging that Sandusky, their manager at U-Haul, had harassed them and discriminated against them. Several weeks later, on May 14, 2015, Sandusky terminated the brothers' employment. On July 15, 2015, the brothers filed administrative complaints with and obtained immediate right-to-sue notices from the former Department of Fair Employment and Housing[4] regarding what they alleged were retaliatory terminations.

---

[4] On June 30, 2022, the former Department of Fair Employment and Housing was renamed the Civil Rights Department. (Sen. Bill No. 189 (2021–2022 Reg. Sess.); Stats. 2022, ch. 48, § 30.)

On November 2, 2015, the brothers filed a complaint in the Fresno County Superior Court against U-Haul and Sandusky, in connection with which they paid $435 in filing fees. The original complaint set forth four causes of action under California's Fair Employment and Housing Act (FEHA)—retaliation, discrimination, and harassment based on race/color/national origin, and failure to prevent such retaliation, discrimination, and harassment—as well as a retaliation cause of action under section 1102.5 et seq. against U-Haul, and a defamation cause of action against Sandusky and U-Haul.

The brothers then filed a first amended complaint pursuant to Code of Civil Procedure section 472, which added allegations that they had served a PAGA notice on the California LWDA, U-Haul, and its attorneys (a prerequisite to bringing a PAGA claim), as well as allegations about their efforts to exhaust their administrative remedies. The first amended complaint also included a seventh cause of action for declaratory relief, seeking a court order finding U-Haul's arbitration agreement unenforceable.

### C. U-Haul and Sandusky Move to Compel Arbitration and the Brothers Seek Leave To File a Further Amended Complaint

U-Haul and Sandusky moved to compel arbitration and stay proceedings pending arbitration. The brothers opposed on the ground, inter alia, that there was no enforceable arbitration agreement. The next day, the brothers sought, on an ex parte basis, to stay the motions[5] to compel arbitration and allow the brothers to seek leave to file a second amended complaint on an expedited time

---

[5] U-Haul and Sandusky filed two motions to compel arbitration, one regarding Thomas Rocha's claims and one regarding Jimmy Rocha's claims.

frame.  The court denied the application and ordered the motion for leave to amend "be heard as a noticed motion," and took the motions to compel arbitration off calendar until the amendment issue was resolved.

The brothers thereafter filed a noticed motion for leave to file a second amended complaint (the proposed amended complaint) that added, inter alia, a section 1194 claim against Sandusky for his failure to pay minimum wages to the brothers for work they performed for Sandusky personally.  Specifically, the proposed amended complaint alleged that Sandusky "failed to pay [the brothers] . . . minimum wage of $8.00 or $9.00 per hour (depending on the time period) for any work that they performed for Sandusky" (capitalization omitted) and that Sandusky "failed to provide [them] with time cards or pay stubs in order to avoid paying the minimum hourly wage."  The proposed amendments alleged that "Sandusky would tell [the brothers] not to clock out, and then Sandusky would tell them to work at his personal residence, moving furniture, gardening, trimming trees, etc.  Thus, U-Haul was paying [the brothers] for the work they performed for Sandusky's personal benefit until 3:30 p.m., which was the time that they would normally end their shifts.  However, if [the brothers] worked past the end of their shifts, neither U-Haul nor Sandusky paid them for that time."  (Boldface and capitalization omitted.)

The proposed amendment also includes a request for relief under the PAGA, based on both the Labor Code violations alleged in the original complaint (which again appeared in the proposed amended complaint), and the alleged Labor Code violations by Sandusky reflected only in the proposed amended complaint.  The court denied the brothers leave to amend.  The court reasoned that the proposed PAGA-related amendments would be futile, because the brothers had not alleged facts giving them standing to seek

9

PAGA relief, as they were not suing on behalf of other former or current employees.

Thereafter, the court granted U-Haul and Sandusky's motions to compel arbitration, rejecting the brothers' argument that the arbitration agreement was unconscionable and thus unenforceable. Although the court found that the arbitration agreement was procedurally unconscionable, the court also found that it was not substantively unconscionable. As both procedural and substantive unconscionability must be present to find the agreement unenforceable, the trial court reasoned that the arbitration agreement was valid and compelled the dispute to binding arbitration.

### D. U-Haul Prevails in the Arbitration of the Brothers' Claims

Each of the brothers paid $200 to initiate separate arbitration proceedings, as required by the FAA. Thereafter, the parties agreed to consolidate the two arbitrations.

The consolidated arbitration proceedings spanned approximately two years. Following discovery, the brothers abandoned their causes of action for defamation and declaratory relief (seeking a determination that the arbitration policy was invalid), opting to proceed only with the remaining five causes of action in the operative complaint (the FEHA claims and section 1102.5 retaliation claim) against U-Haul. On August 14, 2019, the arbitrator issued a 12-page "findings and final award," in favor of U-Haul on all causes of action. (Capitalization omitted.)

### E. The Brothers Unsuccessfully Attempt To Vacate the Arbitral Award and Appeal

The brothers moved to vacate the arbitrator's award "on the ground that the parties never entered into a binding enforceable

arbitration agreement," because the agreements they signed were unconscionable.

In opposing the motion to vacate, U-Haul requested the court affirm the arbitration award, and further moved the court to impose sanctions on the brothers. The court imposed the requested sanctions, confirmed the arbitration award, and entered judgment in favor of U-Haul and Sandusky.

The brothers timely appealed the judgment. Through their appeal, the brothers seek reversal of: the judgment, the denial of their motion to file the proposed amended complaint, and the order granting U-Haul and Sandusky's motions to compel arbitration. They do not challenge the sanctions order.

## DISCUSSION

On appeal, the brothers argue that the trial court erred (1) in granting U-Haul's motion to compel arbitration, and (2) in denying them leave to file their proposed amended complaint.

### A. Unconscionability

The brothers argue that the arbitration agreement is unconscionable and thus unenforceable. We disagree. "[U]nder California law, as under federal law, an arbitration agreement may only be invalidated for the same reasons as other contracts." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 98 (*Armendariz*).) Thus, under both the FAA and California state law, unconscionability of an arbitration agreement is a basis for denying a motion to compel arbitration. (See *id.* at pp. 98 & 114 [FAA and California state law]; *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1079 (*Little*).)

Where, as here, there are no meaningful factual disputes regarding the agreement, and the language of an arbitration provision is not in dispute, our review is de novo. (*Molecular*

11

*Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 707.)

"Unconscionability has procedural and substantive aspects." (*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 655; see also *Armendariz, supra*, 24 Cal.4th at p. 114.) "Both procedural and substantive unconscionability must be present before a contract or term will be deemed unconscionable." (*Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 178 (*Serafin*); *Armendariz, supra*, at p. 114.) "Substantive unconscionability focuses on the actual terms of the agreement, while procedural unconscionability focuses on the manner in which the contract was negotiated and the circumstances of the parties." (*American Software, Inc. v. Ali* (1996) 46 Cal.App.4th 1386, 1390.) A " 'sliding scale is invoked' " where "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra*, at p. 114.)

### 1. *Procedural Unconscionability*

Procedural unconscionability "focuses on the elements of oppression and surprise. [Citation.] Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." (*Serafin, supra*, 235 Cal.App.4th at p. 177.)

Arbitration agreements imposed as a mandatory condition of employment are not per se unlawful or unconscionable under the FAA or California law. (*Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 119; *Armendariz, supra*, 24 Cal.4th at pp. 97−99.) Instead, the unilateral, "take-it-or-leave-it" nature of such agreements is but one factor courts consider in assessing

procedural unconscionability (*Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 704), and overall enforceability will depend on the "sliding scale" analysis of procedural and substantive unconscionability noted above. (See *ibid.* ["[w]hen . . . there is no other indication of oppression or surprise [other than any oppression resulting from unequal bargaining power], 'the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high' "]; *Fittante v. Palm Springs Motors, Inc.* (2003) 105 Cal.App.4th 708, 722.)

Some California courts have concluded that "where the arbitration provisions presented in a contract of adhesion are highlighted for the employee, any procedural unconscionability is 'limited.' " (*Serafin, supra*, 235 Cal.App.4th at p. 179.) For example, where an arbitration provision appeared "in [a] two-page, freestanding document, relating solely to arbitration, that [the employee] received and signed," it was "unquestionably highlighted" (*ibid.*), and "a minimal degree of procedural unconscionability ar[ose] from the adhesive nature of the agreement." (*Id.* at p. 180.) Similarly, in *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462 (*Roman*), the court found an arbitration provision appearing on the last page of a seven-page document, "set forth in a separate, succinct (four-sentence) paragraph" with a heading cautioning the employee to read carefully, was not unconscionable. (*Id.* at p. 1471.) The court explained that "whatever procedural unfairness is inherent in an adhesion agreement in the employment context, it was limited" under such circumstances. (*Id.* at pp. 1470–1471.)

Under this authority, the agreement at issue here creates only "limited" procedural unconscionability. (*Roman, supra,* 172 Cal.App.4th at p. 1471; see *Serafin, supra*, 235 Cal.App.4th at

13

p. 179.)  The arbitration agreement is a stand-alone document, "not buried in a lengthy employment agreement" (*Roman, supra*, at p. 1471), and the signature page bears the heading, in all capital letters, "U-HAUL EMPLOYEE AGREEMENT TO ARBITRATE." At the outset, the agreement flags for the signatory the importance of reviewing the document—"Please take the time to read this material.  IT APPLIES TO YOU"—and clearly discloses, in an underlined portion on the first page, that U-Haul is requiring the employee to sign the agreement as a term of continued employment at U-Haul.  (See *Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 422 [consent implied from continued employment after notice of mandatory arbitration policy].)  Nor does anything else in the record indicate procedural unconscionability.

### 2.    *Substantive Unconscionability*

Substantive unconscionability results from provisions that are "overly harsh" or "one-sided."  (*Little, supra*, 29 Cal.4th at p. 1071, internal quotations omitted; see, e.g., *Armendariz, supra*, 24 Cal.4th at pp. 110−111 [provisions requiring employee to pay arbitration fees beyond a certain amount].)

The brothers argue the agreement is substantively unconscionable because they interpret it as:  (1) preventing an employee from bringing a claim related to U-Haul or their employment at U-Haul against other U-Haul employees in any forum (judicial or arbitral), (2) in practice, requiring the brothers to pay more in connection with their arbitrated dispute than they would have, had they proceeded solely in court, (3) denying employees the right to appeal under any circumstances, (4) prohibiting employees from seeking relief from governmental agencies, and (5) requiring employees to waive the right to seek PAGA relief.  We address each of these in turn below, and

14

conclude none of them supports that the agreement as a whole is substantively unconscionable. We need not decide if the PAGA waiver provision is unconscionable, because that provision can be severed and does not render the entire arbitration agreement unenforceable.

### a. *Claims against U-Haul employees*

The brothers argue that the agreement is unconscionable because it forces them to effectively waive their right to bring claims related to their employment at U-Haul against U-Haul employees in *any* forum. Specifically, the brothers characterize the arbitration agreement as "requir[ing] all employment-related claims be arbitrated, [and] . . . . additionally illegally prohibit[ing] its employees from making any claims, whatsoever, against any other U-Haul employees, such as . . . Sandusky, even if the other employee would be legally responsible in their individual capacity for such harm." (Boldface, capitalization, italics, and underscoring omitted.) As the sole basis for this characterization, the brothers cite the following language in the agreement: "The parties in any such arbitration will be limited to you and U-Haul, unless you and U-Haul agree otherwise in writing." The brothers ignore, however, that "U-Haul" is a defined term in the arbitration agreement that encompasses U-Haul employees (and the employees of U-Haul-affiliated companies as well). Thus, the arbitration agreement does not deny the brothers a forum in which to bring claims related to their employment at U-Haul against U-Haul employees like Sandusky, because such claims are arbitrable under U-Haul's arbitration agreement.

15

### b. *Arbitration fees*

A predispute arbitration agreement that requires the employee to bear any type of expense that he would not otherwise bear in court is "contrary to public policy, and is therefore grounds for invalidating or revoking an arbitration agreement." (*Armendariz, supra*, 24 Cal.4th at p. 110.) The brothers argue that the arbitration agreement required them to pay more than the court filing fee to arbitrate their claims, because it required them to pay $200 in AAA filing fees to commence arbitration, in addition to the $435 filing fee they had already paid the Fresno County Superior Court to file their complaint. But the *arbitration* fees the brothers paid were no more than—indeed, they were less than—the civil suit filing fee, consistent with the arbitration agreement provisions on fees. The fact that the brothers ignored their "obligation . . . to submit to final and binding arbitration any and all claims and disputes . . . that are related in any way to [their] employment or the termination of [their] employment with U-Haul" as their "sole and exclusive remedy," and instead incurred a court filing fee in addition to arbitration fees, is not a basis for finding the agreement unconscionable. In addition, the record reflects U-Haul reimbursed the brothers' AAA filing fee.

### c. *Right to appeal*

The brothers next argue that the arbitration agreement is unconscionable because it denies them the right to appeal from an arbitration award. This is an inaccurate characterization of the agreement. The arbitration agreement states it is governed by the FAA, which provides for appellate review of orders "refusing a stay of any action" based on arbitration proceedings, "denying a petition . . . to order arbitration to proceed," "denying an application . . . to compel arbitration," "confirming or denying

confirmation of an award or partial [arbitral] award," "modifying, correcting, or vacating an [arbitral] award," "an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title," or "a final decision with respect to an arbitration that is subject to [the FAA]." (9 U.S.C. § 16(a).) The arbitration agreement further provides that if the FAA is found inapplicable, then it will be "governed by the applicable state arbitration statutes"—here, California law, which likewise provides for a right to appeal. (See Code Civ. Proc., § 1294, subds. (b)−(d).) The arbitration agreement's reference to the decision of the arbitrator being "final and binding" is not inconsistent with the right to appeal. Nor is an arbitration agreement unconscionable for failure to explicitly reference judicial review. (*Little, supra*, 29 Cal.4th at p. 1075, fn. 1 ["the fact that an arbitration agreement does not explicitly provide for judicial review is no basis for invalidating it"].)

### d. *Ability to seek relief in administrative fora*

The brothers argue that the arbitration agreement is unconscionable because it "prevents employees from pursuing claims for statutory rights with the agencies that provide an administrative forum for such claims." This argument misconstrues the current state of the law. "[T]he inclusion of a provision limiting resort to an administrative forum does not render [an] arbitration agreement unconscionable or unenforceable." (*Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 682.) As our state Supreme Court explained in *Pearson*—expressly addressing and distinguishing the cases on which the brothers rely—only an arbitration agreement provision that purports to prevent an administrative agency from taking *prosecutorial* action is unconscionable. (*Id.* at p. 681.) Specifically,

17

our state Supreme Court held that "even if the [arbitration] agreement [at issue] were understood to preclude 'formal administrative . . . proceedings,' it would not be unlawful in all possible applications.  It is true that the United States Supreme Court has recognized in *EEOC v. Waffle House, Inc.* (2002) 534 U.S. 279 . . . that an arbitration agreement between an employer and an employee is not effective to bar the Equal Employment Opportunity Commission from prosecuting statutory antidiscrimination violations.  And we have stated in *Armendariz, supra*, 24 Cal.4th at page 99, footnote 6, anticipating *Waffle House*:  'Nothing in this opinion . . . should be interpreted as implying that an arbitration agreement can restrict an employee's resort to the Department of Fair Employment and Housing, the administrative agency charged with prosecuting complaints made under the FEHA, or that the department would be prevented from carrying out its statutory functions by an arbitration agreement to which it is not a party.'  [¶]  But as the United States Supreme Court recently recognized in *Preston v. Ferrer* (2008) 552 U.S. 346 . . . , an arbitration agreement could, under federal law, validly limit the resort of an employee to an administrative agency that acts as an adjudicator, rather than as a prosecutor, of employment claims, such as the Labor Commissioner in this state.  (*Id*. at p. 359.)  Even assuming an arbitration clause purporting to override the statutory jurisdiction of an administrative adjudicator would violate California law, state law would be preempted when applied to an arbitration agreement covered by the [FAA]." (*Pearson, supra*, 48 Cal.4th at p. 681.)

The arbitration agreement does not prevent the brothers from filing a claim or complaint with an administrative agency that will *prosecute* a claim on their behalf.  To the contrary, the agreement expressly states it affects only the ability of U-Haul,

U-Haul affiliates, employees, and officers—not any administrative agency—to prosecute or defend claims. It thus has no effect on the ability of a government agency to pursue a prosecutorial role, as opposed to an adjudicative one.

e. *PAGA waiver*

Finally, the brothers argue that the agreement is unconscionable because it unlawfully prohibits employees from bringing claims under the PAGA. Specifically, it provides that "[u]nless otherwise prohibited by law, U-Haul and I additionally agree to forego and waive any right to bring an action or claim in a private attorney general capacity." In so arguing, they cite *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*), for the proposition that "an agreement by employees to waive their right to bring a PAGA action serves to disable one of the primary mechanisms for enforcing the Labor Code. Because such an agreement has as its 'object, . . . indirectly, to exempt [the employer] from responsibility for [its] own . . . violation of law,' it is against public policy and may not be enforced." (*Id.* at p. 383, quoting Civ. Code, § 1668, abrogated by *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. ___ [142 S.Ct. 1906, 213 L.Ed.2d 179] (*Viking River*).)

We need not consider whether the PAGA waiver here is unconscionable under *Iskanian,* post-*Viking River*, because even assuming it is, the provision may be severed and does not permeate the arbitration agreement as a whole with unconscionability. (See *McManus v. CIBC World Markets Corp*. (2003) 109 Cal.App.4th 76, 102; *Little, supra*, 29 Cal.4th at p. 1075 [severing single unconscionable provision from arbitration agreement where doing so would not require augmentation of the contract]; *Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 985 [trial court abused

19

discretion by not severing unconscionable provision where "only one provision of an agreement is found to be unconscionable and that provision can easily be severed without affecting the remainder of the agreement"].)

The court therefore properly compelled the parties' dispute to arbitration, and the judgment confirming the award resulting from that arbitration must likewise be affirmed.

## B.    Leave to Amend

We turn next to the brothers' arguments that the court abused its discretion in denying them leave to amend their complaint to add PAGA claims, as well as a non-PAGA claim against Sandusky under section 1194.2. Although great liberality should be exercised in granting a plaintiff leave to amend his or her complaint, " '[l]eave to amend should not be granted where . . . amendment would be futile.' " (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 726, italics omitted.) We review a court's denial of leave to amend for an abuse of discretion. (*Sullivan v. City of Sacramento* (1987) 190 Cal.App.3d 1070, 1081.)

### 1.    *Proposed Unpaid Wages Claim Against Sandusky*

The trial court did not identify any basis on which to deny the brothers leave to amend the complaint to add this cause of action.[6] On appeal, Sandusky argues that, under the proposed allegations, U-Haul already paid the brothers for their work at Sandusky's residence, because they performed much of that work during their shifts at U-Haul and without clocking out. Accordingly, Sandusky argues, the brothers have failed to state a claim for unpaid wages. But the complaint also alleges that Sandusky failed to pay the

---

[6] Whether this claim is arbitrable is not a question before us.

20

brothers for work they performed for him after their U-Haul shifts ended. Accepting these allegations as true, the brothers have stated a claim for unpaid wages. We therefore conclude the court abused its discretion in refusing to grant the brothers leave to amend to bring this claim.

### 2.    *Proposed PAGA Claims*

We next consider whether the trial court abused its discretion in denying the brothers leave to amend to add a PAGA claim against U-Haul and/or Sandusky.

We begin the analysis by determining whether the proposed amended complaint contains sufficient allegations to establish that the brothers have standing to bring a PAGA claim.

The brothers have identified two Labor Code violations alleged in the proposed amended complaint, based on which they argue they are "aggrieved employees" for purposes of establishing PAGA standing: (1) the section 1102.5 violations already alleged in the operative complaint, and (2) the section 1194 unpaid wages violation they propose to allege against Sandusky.

As to the first possible basis for standing, in their initial briefing to this court, the brothers stated "that if this court affirms the trial court's decision that the arbitration agreement[ ] [is] enforceable"—as we do above—"then the parties are bound by the finding of the arbitrator that U-Haul did not retaliate against the [brothers] in violation of . . . section 1102.5, and [they] would no longer be considered to be 'aggrieved employees' pursuant to the PAGA statutes." (Capitalization omitted.) We requested supplemental briefing on this issue.[7] In their supplemental

_____

[7] Specifically, we requested supplemental briefing in response to the following questions: "To what extent, if at all,

21

briefing, the brothers change their position and argue that "the arbitrator's conclusion that the [brothers] failed to prove that U-Haul violated the Labor Code did not affect [their] status as 'aggrieved employee[s]' under the PAGA." (Boldface and capitalization omitted.) For reasons we explain below, we disagree and conclude the arbitrator's finding that the brothers did not suffer a section 1102.5 violation as alleged in the operative complaint precludes them from qualifying as "aggrieved employees" based on that same alleged violation.

The arbitrator's finding does not have the same effect on the brothers' ability to establish PAGA standing based on Sandusky's alleged violation of section 1194. PAGA standing created by such an alleged violation would only support a PAGA claim against Sandusky.

---

does the arbitrator's conclusion that respondent U-Haul . . . did not violate appellants' rights under the Labor Code affect appellants' status as 'aggrieved employee[s]' under [PAGA] and, more specifically, . . . section 2699, subdivisions (a) and (c)? Relatedly, how does this affect appellants' standing to bring a PAGA claim based on the allegations in the proposed second amended complaint? In answering this question, please address how, if at all, a proposed PAGA plaintiff who has actually litigated (or arbitrated) the Labor Code violations, based on which he or she would establish standing to bring a PAGA claim, is similar to a proposed PAGA plaintiff who has settled claims based on such Labor Code violations. (See *Kim*[, *supra*,] 9 Cal.5th 73.) [¶] How, if at all, does *Viking River*[, *supra*,] 142 S.Ct. 1906 . . . affect whether appellants have standing to bring a PAGA claim based on the allegations in the proposed second amended complaint?"

a. *General Analytical Framework: Principles of Issue Preclusion Determine the Effect of the Arbitrator's Finding on the Brothers' Standing To Bring Their Proposed PAGA Claims*

The PAGA defines an "aggrieved employee" who has standing to bring a PAGA claim as "any person who was employed by the alleged violator [of the Labor Code] and against whom one or more of the alleged violations was committed." (§ 2699, subd. (c).) Our state Supreme Court has confirmed the use of the word "alleged" in this definition reflects the Legislature's intent not to impose a "heightened preliminary proof requirement" for establishing standing prior to adjudication on the merits—i.e., "as a condition to the filing of suit or preliminary discovery." (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 546.) Thus, unless and until there is a finding on the merits regarding the alleged violation, allegations of a Labor Code violation by an alleged employee or former employee are alone sufficient to establish PAGA standing. (See *id.* at pp. 545–546.)

Because settlement of an individual Labor Code claim does *not* reflect any determination regarding the merits of an alleged violation, but rather addresses injury from an alleged violation and/or how to redress the alleged violation, such settlement does not affect the ability of a plaintiff to later establish PAGA standing using the same allegations. For this reason, our state Supreme Court has concluded that an employee plaintiff who settles his individual Labor Code claims against an employer may still be an "aggrieved employee" for the purposes of bringing a PAGA claim based on the same employer conduct. (See *Kim, supra,* 9 Cal.5th at p. 80.) As our high court explained: "The Legislature defined PAGA standing in terms of violations, not injury. . . . [Citation.] . . . The remedy for a Labor Code violation, through settlement or other

23

means, is distinct from the fact of the violation itself." (*Id.* at p. 84, italics omitted.) Thus, absent an adjudication regarding the underlying Labor Code violation, allegations of a violation will suffice to establish standing—even for a plaintiff who has settled all related non-PAGA claims.

By contrast, an adjudication that determines that a violation has not occurred, like the arbitrator's finding regarding U-Haul's alleged violations in this case, does not merely address injury or redress, but finally determines "the fact of the violation itself"— precisely the situation the California Supreme Court noted was not present in *Kim*. (*Kim, supra*, 9 Cal.5th at p. 84, italics omitted.) Once the Labor Code violations based on which a plaintiff seeks to qualify for PAGA standing have been finally adjudicated, the extent to which that adjudication prevents a plaintiff from qualifying for standing will depend on general principles of issue preclusion. Such an approach is necessary in order to avoid inconsistent adjudications as to whether a particular Labor Code violation occurred. It is also entirely in line with the reasoning underlying *Kim*, which focused on settlement being unrelated to an adjudication of the merits of the underlying Labor Code claim. (Cf. *Donohue v. AMN Services, LLC* (2018) 29 Cal.App.5th 1068, 1102 (*Donohue*) [because employee plaintiff's "individual (class) claims [under the Labor Code had] failed . . . on the basis that [the plaintiff] did not meet her burden of establishing an issue of material fact as to the existence of a [Labor Code] violation" (italics omitted), plaintiff could not establish PAGA standing using the same Labor Code violation alleged in her individual claim], revd. on other grounds *Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58.)

24

b. *The Effect of the Arbitrator's Finding on the Brothers' Standing To Bring Their Proposed PAGA Claims*

Having established that the effect of the arbitrator's section 1102.5 finding on the brothers' ability to allege PAGA standing in their proposed amended complaint will depend on general principles of issue preclusion, we turn now to applying those general principles.

Issue preclusion "precludes relitigation of issues argued and decided in prior proceedings." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341; see *id.* at p. 341, fn. 3.) The doctrine is applied "only if several threshold requirements are fulfilled," namely: (1) "the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding"; (2) "this issue must have been actually litigated in the former proceeding"; (3) "it must have been necessarily decided in the former proceeding"; (4) "the decision in the former proceeding must be final and on the merits"; and (5) "the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Id.* at p. 341; see *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 825.)

i. *PAGA standing based on alleged section 1102.5 violation*

The requirements for issue preclusion are all satisfied with respect to the issue of whether the brothers are "aggrieved employees" based on the alleged section 1102.5 violation. The arbitrator's finding addressed the same issue the brothers want to relitigate in connection with PAGA standing: whether U-Haul, through its employee Sandusky or otherwise, retaliated against the brothers in violation of section 1102.5. This issue was actually litigated in the arbitration, and was necessary to resolution of the

25

claims in arbitration. The arbitrator's section 1102.5 finding is final and binding on the brothers. Finally, the brothers are the parties against whom preclusion is sought, and they were parties to the arbitration.[8] Because all the requirements for issue preclusion are met, the arbitrator's finding precludes the brothers from using the allegations in the proposed amended complaint that they suffered a section 1102.5 violation to establish PAGA standing.

The cases the brothers cite are not to the contrary, as they involve prior litigation addressing the *injury* from a violation, and thus fall within the analytical framework of *Kim*. (See, e.g., *Raines v. Coastal Pacific Food Distributors, Inc.* (2018) 23 Cal.App.5th 667, 670 [lower court erred in granting summary adjudication on PAGA claim based on the plaintiff's failure to prove injury from a section 226, subdivision (a) violation, as injury is required only for individual claim under section 226, subdivision (e), not a PAGA claim]; *Lopez v. Friant & Associates, LLC* (2017) 15 Cal.App.5th 773, 788 ["a plaintiff seeking civil penalties under PAGA for a violation of section 226[, subdivision] (a) does not have to satisfy the 'injury' and 'knowing and intentional' requirements" applicable to an individual claim under section 226, subdivision (e)(1)].) Here, however, the arbitrator's finding squarely addresses "the fact of" the alleged Labor Code violation at issue both in the operative

_____

[8] As we discuss further below, this last requirement— that the party against whom preclusion is sought be the same in both proceedings—does not also require the party against whom preclusion is sought be acting in the same capacity in both proceedings. Nevertheless, even if, as at least one case has held, issue preclusion does require such identical capacity (see *Gavriiloglou v. Prime Healthcare Management, Inc.* (2022) 83 Cal.App.5th 595, 602−603 (*Gavriiloglou*)), this would not change the ultimate outcome of our issue preclusion analysis below.

26

complaint and at the arbitration[9] (*Kim, supra,* 9 Cal.5th at p. 84, italics omitted):  Specifically, the arbitrator found that the brothers had "failed to carry their burden of establishing that [U-Haul] violated the Government and Labor Code provisions as alleged in their [c]laims."

Although not couched in terms of an issue preclusion analysis, we view *Donohue, supra,* 29 Cal.App.5th 1068, revd. on other grounds (2021) 11 Cal.5th 58, as more on point than the cases on which the brothers rely.  *Donohue* held the trial court did not err in granting the employer's motion for summary adjudication of a former employee plaintiff's PAGA cause of action based on the court's rulings against the employee on her non-PAGA class Labor Code claims.  (*Id.* at pp. 1100–1103.)  The plaintiff acknowledged that "each of the PAGA claims 'is derivative of [the plaintiff's] other claims under the . . . Labor Code"—that is, that she was seeking standing as an "aggrieved employee" based on the same Labor Code violations alleged in her individual claims.  (*Id.* at p. 1100.)  Given the rulings in the context of the individual claims that no such violations had occurred, the plaintiff "did not meet her burden of establishing an issue of material fact as to whether she 'individually experienced' any particular Labor Code violation," as she must to establish PAGA standing.  (*Id.* at p. 1102.)

We disagree with *Gavriiloglou, supra,* 83 Cal.App.5th 595 that the doctrine of issue preclusion applies differently when considering the effect of an adjudication regarding a plaintiff's

[9] With the exception of the defamation and declaratory relief claims the brothers abandoned during arbitration, the claims to which the arbitrator's finding refers are the same as those alleged in the operative complaint, and encompass all the conduct alleged in the operative complaint.

27

individual Labor Code claim on that plaintiff's ability to establish PAGA standing.  In *Gavriiloglou*, Division Two of the Fourth District concluded that an arbitral award concluding "that the alleged Labor Code violations did not occur" against the plaintiff (*id.* at p. 600) did not preclude that same plaintiff from qualifying as an "aggrieved employee" under the PAGA based on the same alleged Labor Code violations, because the plaintiff was acting in different capacities in bringing her individual claim and her PAGA claim.  (*Id.* at pp. 602−603.)  The court relied on a purported general rule that " '[w]ith respect to issue preclusion, a party appearing in successive actions . . . is not precluded where the capacities in which he participated are different.' [Citation]." (*Id.* at p. 603.)  To support this proposition, *Gavriiloglou* cites section 36, subdivision (2) of the Restatement Second of Judgments, Code of Civil Procedure section 1908, subdivision (a)(2), and three cases:  *Holman v. County of Santa Cruz* (1949) 91 Cal.App.2d 502, 513; *Meldrim v. Board of Supervisors* (1976) 57 Cal.App.3d 341, 346 (*Meldrim*); *Travis Glass Co. v. Ibbetson* (1921) 186 Cal. 724, 729−730 (*Travis Glass*).  (*Gavriiloglou, supra*, at pp. 602−603.)  It also refers to *Howitson v. Evans Hotels, LLC* (2022) 81 Cal.App.5th 475, 490−492 (*Howitson*) as coming "to a similar conclusion." (*Gavriiloglou, supra*, at p. 604.)  None of these cases, however, applied a broad rule that issue preclusion requires the precluded party to have been acting in the same capacity in both proceedings at issue—indeed, none of them even involves issue preclusion at all.   Rather, these cases—and the cited Code of Civil Procedure section—on which *Gavriiloglou* relies all involve claim preclusion, also referred to as res judicata.  (See Code Civ. Proc., § 1908, subd. (a)(2) [*judgment* is conclusive between the parties when "litigating . . . in the same capacity"].)  Claim preclusion or " '[r]es judicata' describes the preclusive effect of a final judgment

28

on the merits" and "prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.  Collateral estoppel, or issue preclusion, 'precludes relitigation of issues argued and decided in prior proceedings.' " (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.)

Moreover, the claim preclusion cases cited in *Gavriiloglou* are distinguishable from the instant matter in other ways as well. (See *Travis Glass, supra*, 186 Cal. at pp. 729−730 [action for the conversion by plaintiff acting in his individual capacity did not preclude subsequent claim by plaintiff in his capacity as a creditor of the company determined in the first litigation to be the new owner of the bottles]; *Meldrim, supra*, 57 Cal.App.3d at p. 346 [judgment regarding validity of an ordinance brought by a county supervisor in his individual capacity against the county and the county auditor did not bar a subsequent suit challenging the ordinance and naming as defendants the county supervisors in their capacity as public officers]; *Holman, supra*, 91 Cal.App.2d at p. 513 [a suit against fire commissioners in their individual capacities did not restrict a suit against them in their official capacities]; *Howitson, supra*, 81 Cal.App.5th at p. 482 [settlement of employee's Labor Code and unfair competition claims, individually and as a representative of a putative class, *without any adjudication of the merits*, did not have claim preclusive effect on her PAGA claim " 'based on the same factual predicates' "].)  The cases *Gavriiloglou* cites cannot provide authority for a proposition they do not address.  Nor are we aware of any basis in the case law or logic for creating an identical capacity requirement for issue preclusion now.

But even assuming, for the sake of argument, that *Gavriiloglou* is correct that the identical capacity requirement

29

applies to issue preclusion, we still disagree with the decision's further conclusion that the "same right" exception to the requirement is inapplicable under circumstances like those presented here.  Under the same right exception, " ' "[w]here a party though appearing in two suits in different capacities is in fact litigating the same right, the judgment in one estops him in the other." [Citations.]' " (*Gavriiloglou, supra*, 83 Cal.App.5th at p. 603, quoting *Bernhard v. Bank of America* (1942) 19 Cal.2d 807, 814 (*Bernhard*).)  The same right is at issue in (1) the arbitrator's assessment of whether U-Haul's treatment of the brothers on a particular occasion or occasions violated a particular Labor Code section (made in the context of adjudicating an individual Labor Code claim) and (2) the court's assessment of whether that same conduct constituted a violation of that same Labor Code section (made in the context of a PAGA standing analysis).  The two assessments depend on exactly the same law and exactly the same conduct.  Regardless of the context in which this question is asked, the employer either violated the employee's rights or it did not; this determination "derive[s] from readily ascertainable facts" that are the same in both contexts. (*Kim, supra*, 9 Cal.5th at p. 84.)  Thus, differences in the capacity in which the brothers are appearing in connection with these two assessments—as individuals seeking damages for harm suffered in one, and as proxies for the state seeking statutory penalties in the other—have no effect on either assessment, the conduct considered, or the applicable law.

In reaching a contrary conclusion—that the same right exception did not apply—*Gavriiloglou* relies on the different *remedies* sought by a PAGA plaintiff and an individual plaintiff to distinguish the two rights at issue.  Specifically, *Gavriiloglou* explained that because " '[individual] employees do not own a personal claim for PAGA civil penalties [citation], and whatever

30

personal claims [individual] employees might have for relief are not at stake [citation].' [Citation.] Thus, in the arbitration, [a plaintiff] [is] litigating her own *individual right to damages* for Labor Code violations, whereas in . . . [a] PAGA action, she is litigating the *state's right to statutory penalties* for Labor Code violations." (*Gavriiloglou, supra*, 83 Cal.App.5th at p. 603, italics added.) The "individual right to damages" under a particular code section and a "state's right to statutory penalties" under the exact same code section are distinguished only by the available remedy. (*Ibid.*) And under *Kim*, whether a remedy had been provided for a particular Labor Code violation plays no role in establishing PAGA standing. (See *Kim, supra*, 9 Cal.5th at p. 84 ["[t]he remedy for a Labor Code violation, through settlement or other means, is distinct from the fact of the violation itself," italics omitted].) Remedy aside, determining whether a plaintiff suffered a Labor Code violation is no different in the context of an individual Labor Code claim than it is in the context of determining an employee's standing to bring a PAGA claim. Therefore, in these two scenarios, the plaintiff " 'is in fact litigating the same right.' " (*Bernhard, supra*, 19 Cal.2d at p. 814.)

Thus, even if *Gavriiloglou* were correct that issue preclusion requires identical capacity, the same right exception to that requirement would apply here, and issue preclusion would prevent the brothers from establishing PAGA standing based on the alleged Labor Code violations in the proposed amended complaint.

> ii. *PAGA standing based on Sandusky's violations of section 1194.2*

The brothers next argue that the arbitrator's finding does not bar them from having PAGA standing because the arbitrator "did not actually litigate or arbitrate all of the Labor Code violations based on which they would establish standing to bring a PAGA

claim." (Boldface and capitalization omitted.) The only alleged Labor Code violation they point to besides the alleged section 1102.5 violation discussed above, however, is Sandusky's alleged violations of section 1194.2 by failing to pay the brothers for their work, as set forth in the proposed amended complaint.

Whether a section 1102.5 violation occurred and whether a section 1194.2 violation occurred are obviously not identical issues. Issue preclusion thus does not prevent the brothers from relying on Sandusky's alleged section 1194.2 violation to establish PAGA standing. Moreover, because the proposed amended complaint alleges that Sandusky employed the brothers and committed this Labor Code violation against them, it sufficiently alleges that the brothers are "aggrieved employees" for the purposes of establishing standing to bring a PAGA claim *against Sandusky*. This alleged violation is not a basis on which the brothers can establish standing to bring a PAGA claim against U-Haul, because U-Haul is not the employer who allegedly violated section 1194.2. (See *Huff v. Securitas Security Services USA, Inc.* (2018) 23 Cal.App.5th 745, 751 ["PAGA allows an 'aggrieved employee'—a person affected by at least one Labor Code violation committed by an employer—to pursue penalties for all the Labor Code violations committed by *that employer*," italics added].) But the brothers should have been permitted to amend their complaint to allege a PAGA claim against Sandusky based on the proposed alleged unpaid wages violation.[10]

---

[10] The arbitrability of any portion of the proposed PAGA claim against Sandusky is not an issue before this court.

## DISPOSITION

The order granting the motion to compel arbitration is affirmed.

The order denying leave to file a second amended complaint is reversed to the extent it denies leave to add the proposed PAGA and non-PAGA unpaid wages claims against Sandusky. The judgment is reversed as it applies to Sandusky. In all other respects, the judgment is affirmed. Respondent U-Haul is awarded its costs on appeal.

<u>TO BE PARTIALLY PUBLISHED</u>.

ROTHSCHILD, P. J.

We concur:

BENDIX, J.

BENKE, J.*

---

**\*** Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.